CLARENCE F. WALKER v. MICHAEL E. HYLAND ET AL.

Submitted March 18, 1903—Decided November 9, 1903.

1. An after-born child of a married woman dying testate succeeds, under the provisions of section 21 of the "Act concerning wills," approved April 15th, 1846, to the same portion of her mother's estate as such child would have been entitled to had the mother died intestate.

2. The words "testator" and "father," as used in the twenty-first section of the "Act concerning wills," by virtue of the provisions of section 9 of the "Act relative to statutes," approved March 27th, 1874, will be held to include "testatrix" and "mother."

On case certified by the Court of Chancery to the Supreme Court for its opinion to be certified thereon, under section 79 of "An act respecting the Court of Chancery" (Revision of 1902). *Pamph. L.* 1902, *p.* 537.

The certificate of the Chancellor is as follows:

In Chancery of New Jersey. Between Clarence F. Walker, complainant, and Michael E. Hyland et al., defendants. On bill, &c. Case certified.

The bill of complaint in the above-entitled cause was filed June 16th, 1902, to foreclose a mortgage dated February 20th, 1901, given by Annie Gluck Hyland and Michael E. Hyland, her husband, to Commercial Trust Company of New Jersey, as guardian of Effell Austin, an infant, to secure payment of the sum of $1,000 on the 1st day of March, 1902, and interest from the date thereof at the rate of five per cent. per annum, covering the following described lands and premises:

All of that certain lot, piece or parcel of land, together with the two-story and basement frame dwelling-house erected thereon, situate, lying and being in Jersey City, &c. [Here follows full description of land and premises covered by the mortgage.]

Being the same premises conveyed to Annie Gluck Hyland by Samuel Marks and wife, by deed bearing date February 20th, 1901.

The mortgage was duly acknowledged and recorded in the register's office of Hudson county, in Book 439 of Mortgages, page 482, on February 20th, 1901. It was assigned by the Commercial Trust Company of New Jersey, as such guardian, to Clarence F. Walker, the complainant, on the 13th day of March, 1902. The said lands and premises were owned by said Annie Gluck Hyland. She departed this life at Jersey City, New Jersey, February 14th, 1902, seized thereof, subject to said mortgage, leaving her surviving her husband, the defendant Michael E. Hyland, and one child, the defendant Annie Gluck Hyland, born December 17th, 1901. Mrs. Hy-

land left a last will and testament, a true copy whereof is hereto annexed, admitted to probate by the surrogate of the county of Hudson on the 26th day of February, 1902. Christian Handel, the executor and devisee therein named, qualified as executor of said will February 26th, 1902, and letters testamentary on the estate of Annie Gluck Hyland, deceased, were granted to him on that day by said surrogate. At the time of the filing of the bill of complaint the said Michael E. Hyland and his daughter, the infant defendant Annie Gluck Hyland, resided together on the mortgaged premises, and still reside there. The said William Gluck Hyland mentioned in the will of the said Annie Gluck Hyland, deceased, was born August 14th, 1899, and died July 21st, 1900. The defendants to this cause are Michael E. Hyland, Christian Handel, Christian Handel, executor of the last will and testament of Annie Gluck Hyland, deceased, and Annie Gluck Hyland, infant. Process was duly issued and served, and, on application to this court for the appointment of a guardian *ad litem* for the infant defendant Annie Gluck Hyland, her father, the said Michael E. Hyland, was appointed such guardian. He filed an answer and cross-bill in her behalf. The cross-bill prays that it may be decreed that the said premises, and all the property, real and personal, of which Annie Gluck Hyland died seized, is vested in the infant defendant, Annie Gluck Hyland, subject to the right of curtesy of her father, Michael E. Hyland, in the real estate. On October 1st, 1902, the parties to this cause entered into the stipulation, a copy of which is hereto annexed, and also upon the same day agreed upon a statement of facts, a copy of which is hereto annexed. The only question, then, to be considered in the case was whether, on the death of the said Annie Gluck Hyland, the mortgaged lands and premises became vested in fee in the infant defendant, Annie Gluck Hyland, subject to the curtesy right of her father, the defendant Michael E. Hyland, therein, or whether the title of said lands and premises became vested in said Christian Handel, as provided in and by the last will and testament of Annie Gluck

Hyland, deceased. The issue thus raised was regularly brought before the court on notice to the solicitors of all the parties and on brief submitted by solicitors for the complainant. The question of law arising in this cause and certified to the Supreme Court of the State of New Jersey for its opinion thereon, is the following:

Is the child, Annie Gluck Hyland, under the law, the owner of the lands and premises above described, or does the same pass to and become vested in the said Christian Handel (subject, however, to the right of curtesy of the said Michael E. Hyland), under the provisions of the last will and testament of the said Annie Gluck Hyland, deceased?

Being in doubt as to the foregoing questions of law, I have caused the foregoing case to be made and stated, and I do hereby certify the same to be argued before the bar of the Supreme Court for its advisory opinion on said question.

W. J. MAGIE, *C.*

The following is a copy of the last will and testament of Annie Gluck Hyland, deceased, referred to in the Chancellor's certificate:

In the name of God, amen.

I, Annie Gluck Hyland, of the city of Jersey City, county of Hudson, State of New Jersey, being of sound mind and memory, do hereby make and constitute this my last will and testament.

First. I direct my executor, hereafter named, to pay all my just debts and funeral expenses.

Second. To my husband, Michael E. Hyland, I give and bequeath the sum of twenty-five dollars.

Third. All the rest and residue of my property, both real and personal, I give, devise and bequeath to my son William Gluck Hyland, to be held in trust for him, until he arrives at the age of twenty-one years, by his guardian hereafter named.

Fourth. In case my said son should die before arriving

at the age of twenty-one years, I give, devise and bequeath all my said property to Christian Handel.

Fifth. I hereby appoint Christian Handel, executor of this my last will and testament and empower him to serve as such without giving bonds.

Sixth. I hereby appoint Christian Handel guardian of my son William Gluck Hyland until he arrives at the age of twenty-one years.

In witness whereof, I have hereunto set my hand and affixed my seal this first day of June, in the year of our [L. S.] Lord one thousand nine hundred.

ANNIE GLUCK HYLAND.

The following is the stipulation of counsel in the cause, also referred to in the Chancellor's certificate:

### STIPULATION.

It is hereby stipulated and agreed by and between the complainant and the answering defendants, Michael E. Hyland and Christian Handel, individually and as executor of the last will and testament of Annie Gluck Hyland, deceased:

First. That the defendant, Christian Handel, executor of the last will and testament of Annie Gluck Hyland, deceased, has sufficient funds in his hands of the personal estate of Annie Gluck Hyland, deceased, to pay off the indebtedness due on the bond set forth in the bill of complaint in above cause, unless other claims unknown to him shall be filed with him within the time limited for creditors to file their claims; and, in order that any doubt regarding the same may be properly set at rest, so far as the claim under said bond and mortgage is concerned, this suit shall sleep without prejudice to the rights of either party until the time limited for creditors to file their claims with said executor has expired, and, then, if said executor still has, or is lawfully chargeable with sufficient funds out of said personal estate, to pay said bond

and mortgage, the same shall be paid and satisfied and the mortgage cancelled of record.

Second. The question of title to the mortgaged lands and premises raised by the pleadings shall be pushed to determination, irrespective of anything contained in the foregoing stipulation, to the end that the ownership of said lands and to whom the title thereto in fee-simple is vested, may be determined as speedily as possible by the court.

Dated October 1st, 1902.

CORBIN & CORBIN,
Solicitors of Complainant.
FAGEN & MURPHY,
Solicitors for Defendants, Michael E.
Hyland and Annie Hyland.
ELMER H. GERAN,
Solicitor for Christian Handel, individually and as executor of the last will and testament of Annie Gluck Hyland.

The following are the statements of facts referred to in the Chancellor's certificate:

### STATEMENT OF FACTS.

The following statement of facts on the issue remaining to be determined in the above-entitled cause, under the stipulation herein made and signed by the parties, is agreed upon:

1. Mrs. Annie Gluck Hyland died seized of the lands and premises described in the bill of complaint, at Jersey City, New Jersey, on the 14th day of February, 1902, said lands being subject to the mortgage set forth in the bill. She left a last will and testament which was duly admitted to probate by the surrogate of the county of Hudson on the 26th day of February, 1902, and Christian Handel, the executor herein named, qualified as such on that day, and letters testamentary were thereupon granted to him by said surrogate. No proceeding, by way of appeal or other proceeding, against the

admission of said will to probate, or for construction of the terms of said will, have been taken other than the issue raised by the bill in above cause and answer thereto and said stipulation thereon.

2. She left her surviving, her husband, Michael E. Hyland, and one child, Annie ·Gluck Hyland, born December 17th, 1901, and still living with its father, the said Michael E. Hyland, at Jersey City aforesaid.

3. The child, William Gluck Hyland, mentioned in the said will of said Annie Gluck Hyland, was born August 14th, 1899, at Jersey City aforesaid, and departed this life July 21st, 1900.

Dated October 1st, 1902.

CORBIN & CORBIN,
*Solicitors of Complainant.*
FAGEN & MURPHY,
*Solicitors .for Defendants, Michael E.*
*Hyland and Annie Gluck Hyland.*
ELMER H. GERAN,
*Solicitor of Christian Handel, indi-*
*vidually and as executor of the last*
*will and. testament of Annie Gluck*
*Hyland.*

It is stipulated and agreed that ·the foregoing state of the case is correct and that the copies of papers annexed thereto are true copies of the originals.

CORBIN & CORBIN,
*Solicitors for Complainant.*
FAGEN & MURPHY,
*Solicitors for defendants, Michael E.*
*Hyland and Michael E. Hyland, guar-*
*dian of Annie Gluck Hyland, infant*
*defendant.*
ELMER · H. GERAN,
*Solicitor for defendant, Christian Han-*
*del and Christian Handel, executor of*
*the last will and testament of Annie*
*Gluck Hyland, deceased.*

Before GUMMERE, CHIEF JUSTICE, and Justices HEN-
DRICKSON, FORT and PITNEY.

For Christian Handel, *Corbin & Corbin.*

For Michael E. Hyland and Michael E. Hyland, guardian
of Annie Gluck Hyland, infant, *Fagen & Murphy.*

The opinion of the court was delivered by·

FORT, J. The facts are sufficiently stated at the head· of
this opinion.

Under the case certified to this court by the Court of Chan-
cery, there is but a single question of law for our determina-
tion, namely:

Does an after-born child of a married woman dying testate
succeed, under the provisions of section 21 of "An act con-
cerning wills," approved April 15th, 1846, to the same portion
of her mother's estate as such child would have been entitled
to had her mother died intestate?

Since 1852, a married woman in this state may make a will,
devising her real estate in the same manner as she might if
she were unmarried. *Pamph. L.* 1852, *p.* 407.

The last expression of legislative purpose upon this subject
was made in 1864. *Pamph. L., p.* 698. The act of 1852,
as amended in 1864, as found in the revision of 1874, reads
as follows:

"That any will or testament hereafter made in due form
of law by any married woman above the age of twenty-one
years of any real or personal property shall be held to be as
valid and effectual in law as if she were, at the time of making
said will, and at the time of her death, an unmarried woman;
*provided, always,* that nothing herein contained shall be so
construed as to authorize any married woman to dispose,
by will or testament, of any interest or estate in real property
to which her husband would be, at her death, entitled by law;
but such interest or estate shall remain and vest in the hus-
band in the same manner as if such will had not been made."
*Gen. Stat., p.* 2014, § 9.

The twenty-first section of the act concerning wills of 1846 reads as follows:

"That if a testator, having a child or children born at the time of making and publishing such last will and testament, shall, at his death, leave a child or children born after the making and publishing of his said last will and testament, or any descendant or descendants of such after-born child or children, the child or children so after-born, or their descendant or descendants, respectively, if neither provided for by settlement nor disinherited by the said testator, shall succeed to the same portion of the father's estate as such child or children or descendants as aforesaid would have been entitled to if the father had died intestate; towards raising of which portion or portions, the devisees or legatees or their representatives shall contribute proportionably out of the part devised and bequeathed to them by the same will and testament." *Gen. Stat., p.* 3760, § 19.

The counsel for the defendant, in the second point in his brief, contends that the construction to be given to this section of the act concerning wills is "that the statute, by its terms, is necessarily confined to the case of a married 'man' and a 'father,' and this intentionally so, for at the time it was passed no married woman could make a will."

It is true that the act empowering a married woman to make a will, to devise real estate (subject to her husband's estate by the curtesy), was enacted after the passage of the act concerning wills, and it is equally true that the words employed in section 21 of the act concerning wills, as to the persons to whom it applies, are "testator" and "father."

When a married woman was given the right to make a will, it must, to be valid, conform to the act concerning wills. That proposition certainly cannot be controverted. If it can be, then there is no power, notwithstanding the Married Woman's act releases her from her common law disability, for a married woman to legally execute a will. The method for the execution of a will was provided for by the act of 1851, before the act was passed removing a married woman's disability to make a will. The act of 1851 was a supplement

to the act of 1846. It was never questioned, between 1852, when the act was passed permitting a married woman to make a will, and the re-enactment of the act of 1851, by the revision of 1874, that the provisions of the act of 1851 concerning wills, applied to the execution of a will by a married woman. Yet, section 1 of the act of 1851 uses the word "testator" only. But it is clear that the word "testator" applies to "testatrix," irrespective of our act concerning statutes, because "testatrix," as Webster defines it, means "a female testator." We should have no hesitation in construing "testator" to include "testatrix" if we possessed no act for the construction of statutes. An after-enacted statute, which is amendatory of or which confers power under or removes a restriction imposed by an existing statute, is to be read into or to be deemed to be enlarged or restricted by or to confer the powers of such existing statute, where such a result is a necessary incident to and a natural corollary of the legislation under construction.

Statutes must be construed reasonably, that they may be given their self-evident legislative intent. When the legislature conferred the powers upon a married woman to make a will and failed to provide any specific method therefor, that necessarily carried with it the right to execute the instrument and devise property thereunder as other persons might lawfully do. The right to devise property was also subject to the limitations imposed upon other natural persons in making such a devise.

Nor do we see any force in the contention that because section 21 of the act uses the word "father," that for that reason an after-born child of the "mother," dying testate, would not succeed to any portion of the mother's estate. Speaking for myself alone, if I were compelled to determine this case upon the words of the twenty-first section of the act concerning wills only, I should feel it was a matter of construction (not of legislation, as the defendants contend) to hold that, since 1852, the word "father," in this statute, must be given no more force than "testator" or "testatrix," and that

it applied to either. The section of the act concerning wills here under consideration is a mere re-enactment, as it appears in the act of 1846. Neither prior to nor at the time when the act of 1846 was re-enacted had a married woman power to make a will, except of personal chattels, with the consent of her husband. *Van Winkle* v. *Schoonmaker*, *2 McCart.* 384. Section 21 of the act of 1846 embraced by its terms all the persons to whom it could then apply. When the legislature, in 1852, made it apply to a wife as well as a husband, and a mother as well as a father—that is, to a "married woman" as well as to a "married man"—they necessarily placed the power of the married woman to devise by will, subject to the provisions of the act under which the instrument of devise could be made, and restricted the power to devise to that contained in that act—the act under which she had previously been prohibited from devising at all. Because, if the Married Woman's act of 1852, which empowered a married woman to make a will, did anything, it simply removed the inhibition contained in section 3 of the act concerning wills, which was "that the wills or testaments made, or to be made, of any lands, tenements or hereditaments, or any estate *pur auter vie* by any married woman covert * * * shall not be held or taken to be good or effectual in law." *Gen. Stat., p.* 3758, § 3.

With that section gone and the power given to a married woman to make a will, she took that power subject to all the limitations contained in the act, as to other testators similarly situated, and with the further limitation contained in the proviso to section 9 of the Married Woman's act as to her husband's estate by curtesy.

But if the construction just suggested cannot be sustained, still we all agree that the word "father," as used in the twenty-first section of the act concerning wills, should be held to apply to "mother" by virtue of the ninth section of "An act relative to statutes," approved March 27th, 1874. *Gen. Stat., p.* 3195, § 33.

Section 9 reads as follows: "That whenever, in describing

or referring to any person, party, matter or thing, any word importing the singular number or masculine gender is used in any statute, the same shall be understood to include, and shall apply to several persons and parties, as well as one person or party, and females as well as males, and bodies corporate as well as individuals, and several matters and things as well as one matter or thing, unless it be otherwise provided, or there be something in the subject or context repugnant to such construction."

This section is as forceful in the construction of pre-existing as after-enacted legislation. It is *in pari materia* with every statute of the state. The title of the act clearly indicates its purpose. It is, in effect, an amendment of every existing statute. It is to be deemed a part of every act passed subsequently to it. It is, by express words, made applicable to every statute, unless in the act "it be otherwise provided or there be something in the subject or context repugnant to such construction." It declares that the masculine gender, when "used in *any* statute," shall include "females as well as males." It cannot be said that "father," as used in the twenty-first section of the act concerning wills, does not relate to males, and if that be conceded, how can it be said that "mother," which relates to females, is not embraced in the statute? We have not, in reaching this result, overlooked the decision of the Court of Appeals of New York, cited on the argument in *Cotheal* v. *Cotheal,* 40 *N. Y.* 405. No reasons were given for the statement that the New York act relative to statutes had no application to the case. In that case it may not have been deemed necessary to apply it. In any event, the decision does not conform, in our judgment, to the evident reason and spirit of our act relative to statutes.

The result here reached is consonant with justice. To have reached any other conclusion would have compelled us to do violence, not only to the law, but to our natural instinct of humanity.

. The Court of Chancery is advised that, under the law, the

child, Annie Gluck Hyland, is the owner of the lands and premises described in the complainant's bill, irrespective of the provisions of the last will and testament of her mother, Annie Gluck Hyland, deceased, subject to the estate by the curtesy of Michael E. Hyland, the husband of the said deceased.