KATHERINE E. WHALEN, RELATOR, v. PENSION COMMISSION OF THE POLICE AND FIREMEN'S DEPARTMENT OF ATLANTIC CITY, RESPONDENT.

Argued May term, 1929—Decided November 7, 1929.

Before Justices TRENCHARD, LLOYD and CASE.

For the relator, *Sacks & Sacks.*

For the respondent, *Harcourt & Steelman.*

PER CURIAM.

In this case Katherine E. Whalen, widow of Richard E. Whalen, has a rule to show cause why a writ of *mandamus* should not issue requiring the pension commmission of the police and fire departments of Atlantic City to pay to her as such widow a pension as required by law. There is a stipu-

lation of facts in the case and from these it appears that Richard Whalen became a member of the police force in May, 1892, and continued therein until May 18th, 1916, when he retired. At the time of his retirement he was captain of detectives receiving $1,800 per annum. From the time of his retirement until his death, October 4th, 1924, he received an annual pension of $900. During his membership in the police force there was deducted from his pay by the disbursing officer of the city one per cent. of his salary. After his retirement no moneys were deducted from his pension nor were any moneys voluntarily paid as a contribution by him. Upon the death of Richard no pension was paid to the widow although written application therefor in accordance with the regulations governing the pension commission was made by the widow on November 6th, 1924, and denied by the commission.

The legislation covering police pensions, so far as relevant here, is to be found in chapter 72 of the laws of 1911, page 104; chapter 144 of the laws of 1916, page 298; and chapter 160, laws of 1920, page 324.

The act of 1911 provides for pensions to widows whose husbands, being police officers, had lost their lives in the performance of duty. The act of 1916, supplementary thereto, extended the pension in cases of those whose husbands had died from causes other than injuries received in the performance of their duties. The act of 1920 is a general act applying to all municipalities and appears to be a comprehensive scheme whereby pensions are provided for policemen and firemen and their dependents.

On this rule the defendants contend that the failure of Richard Whalen in his lifetime, after retirement in 1916, to voluntarily make contributions to the pension fund deprived his widow of the right to a pension at his death, and this because of the following language in the act last cited: "The widow of every retired member of such police or fire department, who, while a member of such department, having paid into the fund the full amount of his annual assessments or contribution and continued so to do after his retirement until

his death, and who shall die from causes other than injuries received in the performance of duty, shall, so long as she remains unmarried, receive a pension equivalent to one-half the pay of her deceased husband at the time of his retirement, not exceeding $1,000."

We regard the contention as unsound. In order to create a fund from which pensions should be paid, section 4 of this act directs that there shall be deducted from every payment of salary to such member of the police and fire departments in such municipality, certain percentages of the amount thereof predicated on the years of service; that the municipality shall raise by taxation and pay into the fund an amount equal to four per cent. of the total salaries of the police and fire departments, and that to these moneys there shall be added all fines imposed on the members of the department, all moneys donated and all moneys deducted from salaries by reason of loss of time or absence and one-half of all rewards.

If the act contemplated voluntary payments by the officer, defendant's contention would have force, but throughout the acts of 1911, 1916 and 1920 there is no provision for the payment of moneys by a police officer while a member of the force or after his retirement as a pensioner other than by the deduction from his salary of the specified percentage by the municipality itself. There is no percentage or sum of money that the statute either directs shall be deducted from his pay or that he himself shall voluntarily contribute, and it is only by interpreting the word "salary" as meaning also the word "pension" that any sum whatever can be realized for the pension fund from the pensioner. Assuming that the word salary is intended to cover both salary and pension and that the percentage governing in the former shall apply in the latter, it is but logical to apply the same reasoning to the mode of payment. If the percentage from salary contemplates a like percentage from the pension, the statute provides the method of its collection, which is a deduction by the disbursing officer of the percentage from the salary or pension as the case may be. The duty rests upon the mu-

nicipal officer and not upon the policeman as such or as a pensioner, and it has been held in a number of cases that failure of such municipal officer to make such payments could not affect the right to pension. *Sheehan* v. *Lee,* 96 *N. J. L.* 341; *Van Horn* v. *Donnelly,* 96 *Id.* 345; *affirmed (Court of Errors and Appeals),* 98 *Id.* 909; *Hoff* v. *Lee,* 98 *Id.* 883, and *Hulse* v. *Pension Commission,* 5 *N. J. Mis. R.* 258.

The stress laid on the words "continued to pay" cannot aid the defendants in interpreting the statute inasmuch as these words are but part of a sentence which makes the widow's pension dependent on deceased having paid from his salary as well as continued to pay thereafter. If under this language the continuing to pay was optional with the pensioner, it would indicate the same option as to the compulsory payment from his former salary, a right which did not exist.

We think the pension should have been granted.

(The act of 1920 contains a referendum condition, and there appears to be in the stipulation no admission that a referendum was had in Atlantic City, but the case is argued throughout on both sides as though it had been so adopted, and we have dealt with the case on that assumption.)

The essential facts argued being admitted, a peremptory writ of *mandamus* will be awarded with leave to the defendants to mold the pleadings in such fashion as to permit an appeal if desired.