VICTOR GHESQUIER, ON BEHALF OF ELIZABETH GHES-
QUIER, A MINOR, PROSECUTOR, v. THE FIRE AND PO-
LICE PENSION FUND OF THE CITY OF PATERSON,
DEFENDANT.

Submitted October 16, 1936—Decided December 9, 1936.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and
PERSKIE.

For the prosecutor, *Harry L. Schoen.*

For the defendant, *Charles F. Lynch* and *Salvatore D.
Viviano.*

The opinion of the court was delivered by

PERSKIE, J.   It is conceded that the single question requir-
ing decision in this case is whether a child of a deceased police-
woman is entitled to a pension in pursuance of chapter 160,
*Pamph. L.* 1920, *p.* 324.

The facts which give rise to this question are not in dis-
pute; they are stipulated and are as follows: On May 1st,
1928, Mary I. McGarry became a policewoman of the police
department of the city of Paterson, New Jersey.   On May
15th, 1928, she began to make payments into the fire and
police pension fund of Paterson, and continued to make said
payments until her death on November 15th, 1935.   She died
from causes other than injuries sustained in the performance
of duty.   On April 6th, 1931, she married one Victor Ghes-
quier and as a result of that marriage one daughter, Elizabeth

Ghesquier, was born. The daughter, now three years old, resides with her father, who is now and has been for the past ten years a probation officer of the county of Passaic, at an annual salary of $2,500. It is this child in whose behalf this application has been instituted to review the denial of her application for a monthly pension of $25.

Defendant seeks to justify its denial of prosecutor's right to a pension on the ground that the act makes no provision for such pension to children of deceased policewomen; that the right to pension of children under sixteen years of age applies only to children of a deceased policeman. In other words, legally stated, defendants' contention is that, as to the children of a policewoman, the act exhibits a *"casus omissus"* which this court cannot supply by judicial construction. If that were so, the point would be well taken. *Cf. Public Service Co-ordinated Transport* v. *State Board of Tax Appeals,* 115 *N. J. L.* 97 (particularly pages 103, 104); 178 *Atl. Rep.* 550.

But we do not, however, share the opinion that the pertinent provision of the act exhibits a *"casus omissus."* We think that the language of the act is plain and unambiguous. Let us recur to the act.

Section 1 thereof provides for the voluntary and compulsory ages of retirement, and further provides that *"\* \* \* the widow of every retired member* of such police or fire department \* \* \* shall so long as she remain unmarried receive a pension \* \* \* not exceeding one thousand dollars *for the use of herself and the children under sixteen years of age of her deceased husband, if any."*

Section 3 thereof provides that *"\* \* \** the widow or children \* \* \* of any member of the police or fire department having paid into the fund the full amount of *his* annual assessment or contributions, who shall have lost *his* life in the performance of *his* duty or who shall die from causes other than injuries received in the performance of duty, shall receive a pension \* \* \* not exceeding one thousand dollars—provided, however, that in case of a widow and children such pension shall be paid to the widow *for the use of herself*

*and children,* if any, and in the case of children and no widow, then such pension shall be paid to such of the children who have not attained the age of sixteen years \* \* \* if one child twenty-five dollars monthly." (Italics supplied.)

"The act should be construed liberally to effectuate the legislative intent." *Bederski* v. *Policemen's and Firemen's &c., Newark,* 4 *N. J. Mis. R.* 637, 641; 134 *Atl. Rep.* 90; *affirmed,* 104 *N. J. L.* 163; 138 *Atl. Rep.* 918. *Cf. Hulse* v. *Policemen's Pension Commission, Long Branch,* 5 *N. J. Mis. R.* 258; 136 *Atl. Rep.* 197; *Whalen* v. *Pension Commission, &c.,* 7 *N. J. Mis. R.* 964; 147 *Atl. Rep.* 647; *affirmed,* 107 *N. J. L.* 198; 150 *Atl. Rep.* 921; *Delaney* v. *Hoboken,* 107 *N. J. L.* 1; 151 *Atl. Rep.* 112. We held that the language of the act "forces the conclusion that the legislature dealt with *all the members of the police and fire departments as a class,* without regard to the character of employment." *Sheehan* v. *Lee,* 96 *N. J. L.* 341, 344; 115 *Atl. Rep.* 347; *affirmed,* 98 *N. J. L.* 901; 126 *Atl. Rep.* 924. And one of the statutory canons for the construction of a statute is set forth in section 9 of "An act relative to statutes" (4 *Comp. Stat.* 1709-1910, *p.* 4972), which provides as follows:

"That whenever, in describing or referring to any person, party, matter or thing, any word importing the singular number or masculine gender is used in any statute, the same shall be understood to include, and shall apply to several persons and parties, as well as one person or party *and females as well as males,* and bodies corporate as well as individuals, and several matters and things as well as one matter or thing, unless it be otherwise provided, or there be something in the subject or context repugnant to such construction." (Italics supplied.)

Clearly section 1 of the act, relating to the widow and children of retired police and firemen is not involved in this cause. Nor are we presently concerned with the language that the legislature used in other statutes relating to pension funds. Cf. chapter 122, *Pamph. L.* 1929, amended by chapter 260, *Pamph. L.* 1932. We are concerned solely with section 3 of the act. This section does not contain the limitation set

forth in section 1 thereof ("for the use of herself and the children under sixteen years of age of her deceased husband, if any") and we see no occasion for reading such a limitation into it. The prosecutor is a child of a deceased member of the police department. The fact that the act speaks of such members in the masculine gender is indicative of no legislative intent to deprive the child of a female member of a police department of its benefits. Rather does the language of the act indicate a plain and unambiguous intent to the contrary. It applies to the widow or children or sole dependent parent of *"any member of the police and fire department."* The words "any member of the police and fire department" applies to both male and female. Without attempting to trace the development of the position of women in public life, suffice it to say that the woman of to-day is no longer confined to limited household duties. Nothing which relates to the security, welfare and happiness of mankind is foreign to her. She is concerned with and actually participates in almost every field of human endeavor. Thus we find that long before the enactment of chapter 160, *Pamph. L.* 1920, women held positions in police departments of the cities in this state. Our legislature recognized the fact and protected their positions with tenure. Cf. chapter 99, *Pamph. L.* 1912, *p.* 142. And under the Home Rule act, chapter 152, *Pamph. L.* 1917, *art.* XXXVII (*tit. "Miscellaneous,"* ¶ 20), it is provided that "women may be appointed to any office or position, or be employed in any department or bureau of any municipality." The legislature was, of course, familiar with these facts. But it is obvious that in drafting the act in question, the legislature employed, and adhered to, the well established phraseology of the ages when women did not occupy or enjoy their present status. Thus they spoke, as they did in the days of old, in terms of the masculine gender only. But notwithstanding the language employed by the legislature it is the intent and not the form used to express it that is controlling. Thus, for example, this court in *Walker* v. *Hyland,* 70 *N. J. L.* 69; 56 *Atl. Rep.* 268, held, by virtue of section 9 of our "Act relating to statutes," *supra,* that the words,

"testator" and "father" as used in the twenty-first section of the "Act concerning wills," include the words "testatrix" and "mother." In our opinion chapter 160, *Pamph. L.* 1920, is a comprehensive and all inclusive piece of legislation; it is legislation in and for the interest of all members, male and female, of a police and fire department. The child's mother was regularly appointed as a member of the police department; she paid a certain percentage of her salary into the pension fund. Such payments have been judicially characterized as "protection by insurance." *State* v. *Policemen's and Firemen's, &c., Newark, supra* (at *p.* 644). The apparent distinction is that in the ordinary case of protection by insurance the assured names the beneficiaries while under the act in question the legislature named the beneficiaries. (Italics supplied.)

It seems to us that it would work an obvious wrong—a great injustice, if in construing the plain provisions of the act, we were to make a distinction between children of a deceased policeman and children of a deceased policewoman. There is nothing in reason or right to justify any such construction. The test under the act, it seems to us, is not whether the deceased parent was male or female but whether the deceased parent—male or female—was a member of the police or fire department in good standing. Did he or she, as such member, comply with the provisions of the act?

Nor do we think that it is any answer, as is the one further made here, that prosecutor should not be paid the pension because she is not likely to become a public charge; that her father is well able to take care of her. That is begging the question. The beneficiary of any insurance fund is either entitled to the fund or not. The financial status of the insured or the beneficiary is beside the question.

Our answer to the conceded question here presented is in the affirmative. The motion or resolution denying prosecutor's claim for a monthly pension of $25 is hereby set aside, with costs.