STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ELYZE A. MINTER, A/K/A BOB MINTER, DEFENDANT-APPELLANT.

Argued January 4, 1989—Decided August 4, 1989.

*Alan I. Moldoff,* Designated Counsel, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney).

*Mildred Vallerini Spiller,* Deputy Attorney General, argued the cause for respondent (*Cary Edwards,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, J.

This appeal requires us to balance interests of federalism in application of the New Jersey Wiretapping and Electronic Surveillance Control Act, *N.J.S.A.* 2A:156A–1 to –26 (hereinafter the wiretap law). In particular, we must resolve whether an intercepted telephone message obtained by a federal agent in accordance with federal wiretap law, which would be admissible in a federal criminal trial, is inadmissible in a state court proceeding because the federal agent did not follow procedures required of state agents under the New Jersey wiretap law. We hold that only when the relationship between federal and state agents implicates the concerns that prompted the special requirements of the State's wiretap law will the evidence be inadmissible in a state court proceeding. We find that the record in this case is inadequate to resolve the question of the extent of the cooperation by state and federal agents. We remand the matter for consideration of that one issue.

I

Preliminarily, we note that we do not deal here with "dirty business" undertaken by federal agents. *Cf. Olmstead v. United States,* 277 *U.S.* 438, 470, 48 *S.Ct.* 564, 569, 72 *L.Ed.* 944, 953 (1927) (Holmes, J., dissenting). The record is clear here that the federal agent's actions were strictly in accordance with federal law. Hence no loss of judicial integrity is implicated in a decision to admit the evidence. *See id.* at 484, 48 *S.Ct.* at 574–75, 72 *L.Ed.* at 959 (Brandeis, J., dissenting). Rather, we see the question as turning on a weighing of the Legislature's purposes in regulating the wiretapping of New Jersey's citizens.

For purposes of this appeal, we accept the defendant's version of the facts. Trenton police arrested a man named Ellis on a charge of conspiracy to distribute amphetamines. Ellis went to a Trenton detective for help with his arrest. The Trenton law-enforcement official told Ellis that in exchange for his cooperation, the detective would help Ellis get a suspended sentence.

The Trenton detective then arranged to have Ellis meet two agents of the Federal Drug Enforcement Agency (DEA). The detective then communicated with the Mercer County prosecutor's office to advise the office that Ellis was an informant working for him. The detective continued thereafter to meet with the DEA to discuss Ellis' role in the drug investigation.

One of the DEA agents met with Ellis on June 2, 1981, to have Ellis communicate with the defendant, Elyze A. Minter to purchase drugs. A telephone call was arranged between Ellis and the defendant on June 4, 1981, which was recorded. The call was placed from Morrisville, Pennsylvania, to the defendant's office in Trenton, New Jersey. After the telephone call, DEA instructed Ellis to meet with the defendant. Attempts to do so were unsuccessful. A meeting eventually was set up for June 15, 1981. Ellis met with the DEA agent and was instructed on what he was to say and ask for in setting up a purchase of drugs. This was to be a "controlled buy." The informant was given money to purchase drugs from the defendant under DEA's surveillance. Although Ellis and defendant did meet on this occasion, no purchase of drugs was made.

On June 18, Ellis met again with the DEA agent in Morrisville to make another telephone call with the defendant. This was for another purchase of drugs. The call was recorded in a similar fashion as the previous conversation. During that telephone conversation, Ellis told the defendant he wanted to make a drug buy, but no meeting was set up.

Ellis never made a "controlled buy" from the defendant while under federal surveillance. Ellis maintains, however, that he

did buy drugs from Minter in June 1981, and on two other occasions. DEA, however, closed its case on Minter in February of 1982 and later turned over its evidence to the State in January 1984.

These proceedings followed, and the defendant was indicted for criminal possession of drugs with intent to distribute. Before trial, he moved to suppress the wiretap information. The motion was denied. A jury convicted defendant of conspiracy to distribute cocaine. Defendant received a sentence of three years probation conditioned on service of six months in the Mercer County Correction Center. On appeal, the Appellate Division affirmed his conviction. 222 *N.J.Super.* 521 (1988). Defendant challenged his conviction as based on unlawful and inadmissible wiretap evidence. Two members of the court affirmed his conviction, asserting that the New Jersey wiretap law did not have extra-territorial effect and could not control the conduct of the officers in Morrisville, Pennsylvania. *Id.* at 524–25. The concurring judge agreed with the result but viewed the search as valid because the New Jersey wiretap law regulated only the conduct of state law-enforcement agents and not federal agents and therefore did not render the evidence inadmissible in a state court proceeding. *Id.* at 527 (Brody, J., concurring). Additionally, the second issue raised on appeal was whether the trial court's exclusion of the prior convictions of the State's witness was prejudicial error. Both the trial court and Appellate Division found that the evidence of the informant's prior conviction was too remote and thus properly excluded under *State v. Sands,* 76 *N.J.* 127 (1978). 222 *N.J.Super.* at 527. We leave the prior-conviction ruling undisturbed and address only the wiretap issue. We granted the defendant's petition for certification. 111 *N.J.* 645 (1988).

II

Conceptually, this case presents the flip-side of *Benanti v. United States,* 355 *U.S.* 96, 78 *S.Ct.* 155, 2 *L.Ed.*2d 126 (1957),

in which the Supreme Court examined the related proposition whether wiretap evidence obtained by state officers in accordance with state law but in violation of the then-applicable federal law may be admitted in a federal criminal proceeding. The answer was "no," and the reasoning is clear. Federal wiretap law is paramount: it binds federal and state officials alike, setting a threshold that may not be lowered. *See id.* at 104–06, 78 *S.Ct.* at 159–60, 2 *L.Ed.*2d at 132–33. The use of the tainted evidence will not be countenanced in the federal forum. This case differs in that the search is valid under federal law; the question is whether State law can make the search invalid or the evidence inadmissible in a State court proceeding.

Current federal regulation of wiretaps followed the Supreme Court decisions in *Berger v. New York*, 388 *U.S.* 41, 87 *S.Ct.* 1873, 18 *L.Ed.*2d 1040 (1967), and *Katz v. United States*, 389 *U.S.* 347, 88 *S.Ct.* 507, 19 *L.Ed.*2d 576 (1967). In *Berger*, the Court held the permissive New York eavesdropping statute to be "too broad in its sweep resulting in a trespassory intrusion into a constitutionally protected area and * * * therefore, violative of the Fourth and Fourteenth Amendments." 388 *U.S.* at 44, 87 *S.Ct.* at 1876, 18 *L.Ed.*2d at 1044. The Court condemned "the statute's blanket grant of permission to eavesdrop * * * without adequate judicial supervision or protective procedures." *Id.* at 60, 87 *S.Ct.* at 1884, 18 *L.Ed.*2d at 1053. In *Katz v. United States, supra,* the Supreme Court made clear that the fourth amendment protected "people, not places," holding that eavesdropping on a conversation in a telephone booth offended fourth amendment principles although there had been no trespass on the person's property. 389 *U.S.* at 351–53, 88 *S.Ct.* at 511–12, 19 *L.Ed.*2d at 582–83.

The Omnibus Crime Control and Safe Streets Act of 1968 (codified as amended by the Electronic Communications Privacy Act of 1986, 18 *U.S.C.* §§ 2510–2521), responded to the concerns raised in *Berger* and *Katz* by creating a limited system of wire surveillance and electronic eavesdropping within the

framework of the fourth amendment and the guidelines of *Berger* and *Katz.*

The federal wiretap act authorized states to enact wiretap laws of their own in conformity with certain basic requirements. New Jersey's wiretap law followed the federal pattern in some respects, but not all. Under New Jersey's law, the key guarantee of the right to privacy forbids even parties from surreptitiously recording telephone conversations when acting "at the direction of an investigative or law enforcement officer." *N.J.S.A.* 2A:156A–4(c). In general, the wiretap law forbids anyone to intercept any wire or oral communication, *N.J.S.A.* 2A:156A–3, and defines "intercept" as "the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device," such as a tape recording. *N.J.S.A.* 2A;156A–2(c). Only certain exceptions are permitted. *N.J.S.A.* 2A:156A–4.

At issue here is the exception that permits a party acting at the direction of a police officer to record a conversation. Under the federal wiretap law it is not unlawful for a person acting under the color of law to conduct a wiretap "where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 *U.S.C.* § 2511(2)(c). The federal wiretap act does not require a federal agent to obtain prior authorization from the United States Attorney General's office to record a telephone conversation, but requires only that an agent obtain prior consent from one of the parties to the conversation. 18 *U.S.C.* § 2511(2)(c). New Jersey wiretap law differs, however, because a party to a conversation "acting at the direction of an investigative or law enforcement officer" may intercept the conversation, but the law-enforcement officer must first obtain approval from the Attorney General or a county prosecutor, who shall determine whether "there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception." *N.J.S.A.* 2A:156A–4(c).

The legislative history indicates a strong interest in protecting the privacy of individuals and controlling intrusive police activity. In the 1975 reauthorization of the wiretap law, our Legislature specifically refused to accede to a request by the Attorney General that evidence overheard by New Jersey's law-enforcement officials be admissible similar to the federal counterpart. Attorney General, Report on the New Jersey Wiretapping Act, *L.*1968, *c.* 409; *see* Hyland & Martinez, "Wiretapping and Electronic Surveillance: The New Jersey Experience" (Pt. 1), 173 *N.Y.L.J.* 1, 4 (Apr. 24, 1975). Instead, the Legislature required state law-enforcement officers first to obtain the approval of the prosecuting authorities. S. Judiciary Comm.Statement to S. No. 1417, *L.*1975, *c.* 131 (May 19, 1975).

The legislative history refers to a proposal that a court order, not merely prior authorization, should be required before an informant and agent tape a conversation. New Jersey Wiretapping and Electronic Surveillance Control Act: Hearings on S. 1417, 1096 Leg., 2d Sess. (1975) (V. I at 40, V. II at 45A). The two primary arguments law-enforcement officials made against requiring such an order were the difficulties with time delays and establishing probable cause. *Id.* V. II 42A–44A. One prosecutor offered the view that requiring a court order would be counter-productive because it would drive investigations into the less restrictive federal forum. *Id.* V. II at 45A–46A. Although this suggestion was met with silence, it may demonstrate why the Legislature chose the less stringent proposal requiring prosecutorial authorization. In its 1989 extension of the wiretap law, *L.*1989, *c.* 85, the Senate Judiciary Committee again rejected a request of the Association of Criminal Defense Lawyers that would have required law-enforcement officials to obtain a court order for consensual electronic surveillance. Schwaneberg, "Committee act to extend wiretap law until '94," The Star–Ledger, Feb. 24, 1989, at 34, col. 1.

In any event, the federal agent here could do what the state agent could not. We must resolve, then, what the consequences are in state criminal proceedings. The questions thus

to be resolved are: Does the wiretap law or its underlying policies prohibit the use in New Jersey courts of evidence independently obtained by federal agents according to federal standards, but not to the New Jersey wiretap law? If such evidence is generally admissible, does cooperation between federal and New Jersey officials preclude its admissibility?

## III

Is wiretap evidence obtained independently by federal officers in accordance with federal guidelines, but not state guidelines, admissible in a State prosecution?

## A.

Obviously, the matter would be much simplified if the New Jersey wiretap law specifically addressed the question. For example, it has been held that in a federal criminal trial, evidence procured by state agents in violation of state law is inadmissible even though it would have been admissible if procured by federal agents. *United States v. McNulty*, 729 *F*.2d 1243, 1246 (10th Cir.1984) (*en banc*). This result is mandated by the statutory language. Under the federal act, aggrieved persons may suppress the contents of a wiretap that "was unlawfully intercepted." 18 *U.S.C.* § 2518(10)(a)(i). For the wiretap to be lawful, the federal act requires that state wiretaps comply with both the federal act's guidelines "*and* with the applicable state statute." *United States v. McNulty*, *supra*, 729 *F*.2d at 1264 (interpreting 18 *U.S.C.* § 2516(2)).[1] Hence, it has been held that evidence obtained under a state

---

[1]A majority of federal courts, however, hold that an interception by state officers that does not violate federal law is not "unlawfully intercepted" and is admissible in federal proceedings. *See United States v. Hall*, 543 *F*.2d 1229 (9th Cir.1976), *cert. denied*, 429 *U.S.* 1075, 97 *S.Ct.* 814, 50 *L.Ed.*2d 793 (1977). The theory is primarily one of preemption. *Note, "United States v. McNulty:* Title III and the Admissibility in Federal Court of Illegally Gathered State Evidence," 80 *Nw.U.L.Rev.* 1714, 1725–29 (1986). The legislative history of the federal wiretap law suggests, quite to the contrary, that the federal act set a threshold of privacy that states could raise, at least as to state actors. *Id.* at 1732–33.

wiretap order that violates state law has been "unlawfully intercepted" and must be suppressed.

Like the federal act, New Jersey's wiretap law provides for the exclusion of evidence if "[t]he communication was unlawfully intercepted." *N.J.S.A.* 2A:156A–21(a). But New Jersey cannot make illegal what federal law makes legal for federal agents. In its sphere of activity the federal law is sovereign, and insofar as it establishes minimum standards it is paramount. We can no more set a higher standard for a federal wiretap than could we set a federal warrant requirement. "Neither State law nor the state constitution can control federal officers' conduct." *State v. Bradley,* 105 *Wash.*2d 898, 902–03, 719 *P.*2d 546, 549 (1986), *cited in State v. Mollica,* 114 *N.J.* 329, 351 (1989). The contrary view suggested by the opinion of our dissenting members, that New Jersey law can criminalize the conduct of a federal agent, *see post* at 287 (federal officers are "persons" covered by the Act), would hinder the FBI in the conduct of its independent investigations of organized crime and drug-trafficking in New Jersey. Even if intended, this could never be done under principles of federalism.

Moreover, on its face the wiretap law does not prohibit the use of federally-obtained wiretap evidence. New Jersey's wiretap law includes in its definition of "investigative or law enforcement officer" only officers and prosecuting attorneys of the State of New Jersey or its political subdivisions. *N.J.S.A.* 2A:156A–2(f). Because the act's requirement for prosecutorial concurrence does not extend by its language to the federal agent, the federal agent cannot be regarded as having committed a state offense. To hold that the federal agent had violated state law would offend the principles of sovereignty expressed in *Benanti, supra,* 355 *U.S.* 96, 78 *S.Ct.* 155, 2 *L.Ed.*2d 126, and in our recent decision in *State v. Mollica, supra,* 114 *N.J.* 329. Therefore, the act's automatic-exclusion provisions do not apply. Nor do the disclosure provisions of the wiretap law resolve the question. *See N.J.S.A.* 2A:156A–17(b) (governing

the disclosure of information intercepted in accordance with the wiretap law).  The subject information was intercepted by federal agents in accordance with the federal act.  Hence we must look to other State policies to determine the admissibility of the evidence.

## B.

In otherwise determining whether evidence obtained by federal officers in accordance with federal law would be admissible in a state proceeding in circumstances in which a state officer's evidence would be inadmissible, we may seek guidance from courts that have resolved the evolving problems of federalism attendant to differing state and federal views concerning the validity of searches.  Although it is difficult to think in such terms, it is necessary that we treat the federal government and its agents as officers of foreign jurisdictions for this choice-of-law analysis.  *See State v. Mollica, supra,* 114 *N.J.* at 348.

The Minnesota Supreme Court, in *State v. Lucas,* 372 *N.W.*2d 731 (1985), set forth the varied approaches to resolving the admissibility of evidence in such circumstances.  *Id.* at 736 (citing 1 W. LaFave, *Search and Seizure* § 1.3(c), at 52–56 (1978); Tullis & Ludlow, "Admissibility of Evidence Seized in Another Jurisdiction:  Choice of Law and the Exclusionary Rule," 10 *U.S.F.L.Rev.* 67, 82–91 (1975)).  We adopt Minnesota's excellent summary and conclusions:

Tullis and Ludlow identify three basic situations in which a defendant will move to suppress evidence seized in another jurisdiction: (1) where the evidence was illegally obtained under the law of the place of the search and where it would also be considered illegally obtained in the forum state if the search had occurred there; (2) where the evidence was illegally obtained under the law of the place of the search but where it would not be regarded as illegally obtained according to the law of the forum * * *; (3) where the seizure of evidence was valid under the law of the place where the search occurred but where it would be regarded as unlawful if it had occurred in the forum state.  They argue that, following an exclusionary rule analysis, [1] the forum state should suppress the evidence in the first situation, [2] that the forum state should not suppress it in the second situation unless forum officers participated in the search in the

state where the search occurred, and [3] that the forum state should not suppress it in the third situation.

\* \* \* \* \* \* \* \*

Professor LaFave argues also for an exclusionary rule analysis. He points out that the policy reasons underlying the exclusionary rule for violation of forum law do not necessarily apply with the same force to violations of the law of another state:

> The prospect of deterrence is more remote as is the judicial taint from acceptance of the evidence, and there has been no profit from its own wrongdoing by the convicting jurisdiction. [*Id.* at 736–37 (citations omitted).]

In *State v. Curry*, 109 *N.J.* 1, 10–11 (1987), we noted the varied approaches that states had taken with respect to the issue.[2] The better approach, we think, is the exclusionary-rule analysis set forth in *State v. Lucas, supra*, 372 *N.W.*2d 731. In New Jersey, we have viewed the exclusionary rule as serving both to deter unlawful conduct and to vindicate fundamental state guarantees. *State v. Novembrino*, 105 *N.J.* 95, 157 (1987). Using that analysis, absent participation by State officers in the search, no principles or policies of the exclusionary rule would call for the categorical exclusion from state court proceedings of wiretap evidence that has been obtained by federal officers in accordance with federal law but not state wiretap requirements.

It is clear that excluding wiretap evidence independently obtained by federal agents would not "deter unlawful conduct."

---

[2]The Court queried:

Is the search to be considered legal if it violates the foreign state's law but not the forum's, or is the question whether policy choices call for exclusion of the evidence in the forum? *See People v. Rogers*, 74 *Cal.App.*3d 242, 141 *Cal.Rptr.* 412, 416 (Ct.App.1977), *vacated o.g.*, 21 *Cal.*3d 542, 146 *Cal.Rptr.* 732, 579 *P.*2d 1048 (1978); *People v. Saiken*, 49 *Ill.*2d 504, 275 *N.E.*2d 381 (1971) (using the "center of gravity" or "most significant relationship" test of conflict jurisprudence), *cert. den.*, 405 *U.S.* 1066, 92 *S.Ct.* 1499, 31 *L.Ed.*2d 796 (1972); *People v. Benson*, 88 *A.D.*2d 229, 231, 454 *N.Y.S.*2d 155, 157 (1982); *People v. Graham*, 90 *Misc.*2d 1019, 1029, 396 *N.Y.S.*2d 966, 972 (Co.Ct.1977) (all applying "governmental interests" analysis); *Burge v. State*, 443 *S.W.*2d 720 (Tex.Crim.App.) (holding exclusionary rule is an evidentiary matter as to which forum law controls), *cert. den*, 396 *U.S.* 934, 90 *S.Ct.* 277, 24 *L.Ed.*2d 233 (1969). [*State v. Curry, supra*, 109 *N.J.* at 10–11.]

By definition, what they are doing is lawful; federal law authorizes it. And even if we sought to deter the conduct, so long as the federal agents were intercepting conversations for use in federal prosecutions, there is no reason for them not to continue the interception even if the evidence could not be used in a State court.

Nevertheless, the question remains whether the exclusion of such evidence would "vindicate fundamental state guarantees." The question of the extent of the guarantee necessarily depends on our interpretation of the intent of the Legislature in enacting the wire tap law. As noted, New Jersey's wiretap law does not specifically regulate wiretaps conducted in New Jersey by federal law enforcement officials because the provisions requiring law enforcement officers to obtain prior approval of the Attorney General apply only to state officials. We do not read into this legislation a clear legislative intent to control the conduct of federal law enforcement officials or to exclude evidence obtained by them through wiretaps permitted by federal law. We cannot conclude that the exclusion of such independently intercepted federal evidence is necessary to further the purposes of the wiretap law. Our holding is reinforced by the recognition that the underlying policy requiring Attorney General approval is a creature of statutory law. *Cf. State v. Mollica, supra,* 114 *N.J.* 329 (holding that toll records obtained by federal officials in violation of state constitutional rights can be used as evidence of probable cause to support a search warrant).

We are somewhat put off in this case by the happenstance that the interception was made just across the Delaware River. But we must consider the issue conceptually as though a California police officer, authorized by California law to intercept a Los Angeles phone conversation, happened to learn of a bomb plot in New Jersey. Would our Legislature intend that the information not be used to prosecute the offenders?

Thus, although the purpose of the law might be stated broadly as protecting the citizen's expectation of privacy, in practical terms the exclusion of such evidence would not further these privacy expectations. This is because, as explained previously, as long as the interception is for the purpose of mounting a federal prosecution, the official would no doubt continue to monitor the conversations regardless of whether a state prosecutor would approve of the interception. It is the federal official's duty to perform his or her office in accordance with federal law.

Since the State guidelines do not explicitly prohibit the use of independently-obtained federal wiretap evidence, and the enforcement of the State guidelines to exclude the evidence would not further privacy interests, such evidence need not be excluded. To hold otherwise "would disserve the principles of federalism and comity, without properly advancing legitimate state interests." *State v. Mollica, supra,* 114 *N.J.* at 353.

## IV

Is wiretap evidence obtained by federal agents acting in accordance with federal standards, but not state standards, admissible in a State prosecution if the federal agents were acting in cooperation with State agents?

■ Although neither the language of the wiretap law nor the exclusionary-rule doctrine calls for the exclusion of independently-obtained federal wiretap evidence in a State criminal proceeding, there is one aspect of this case that gives us pause. That is the question of cooperation between state and federal officers: If the wiretap evidence is not obtained independently, is this still the type of evidence that the Legislature would intend to be admissible in a state criminal proceeding?

First, we must be clear that this is not a "silver platter" case. In *Elkins v. United States,* 364 *U.S.* 206, 208, 80 *S.Ct.* 1437, 1439, 4 *L.Ed.*2d 1669, 1672 (1960), the Supreme Court rejected the "silver platter" doctrine, which allowed the prosecutor of one sovereign to use the fruits of an illegal search conducted by

another sovereign. As noted, that problem is not present here because the other sovereign's officers were not acting in violation of paramount federal law. But, as in *State v. Mollica,*

[t]his case thus requires us to consider the implications of the silver platter doctrine and its key element: intergovernmental agency. An important aspect of this determination is whether for constitutional purposes the federal agents can be said to be acting under the "color of state law."

The assessment of the agency issue necessarily requires an examination of the entire relationship between the two sets of government actors no matter how obvious or obscure, plain or subtle, brief or prolonged their interactions may be. The reasons and the motives for making any search must be examined as well as the actions taken by the respective officers and the process used to find, select and seize the evidence. [114 *N.J.* at 355–56.]

■ If a purpose of the investigation is for a State prosecution, the federal agents can, in effect, be deemed agents of the State prosecutors, thus subject to the provisions of *N.J.S.A.* 2A:156A–4(c). Certainly we would not permit State investigators to circumvent the law by merely calling the federal agents and asking them to tap a phone. If a purpose of the investigation is State prosecution, the situation is practically indistinguishable. The Legislature's purpose of protecting the citizen's expectation of privacy would be seriously undermined by admission of evidence not conforming to State guidelines that was gained in the course of such a joint investigation.

We may safely assume that the Legislature would not have intended that a joint strike force or investigative effort would adopt the least common denominator for its activity. "While overt collusion to circumvent state privacy laws is rare, * * * a state's right to provide its citizens greater protections and liberties than does the federal government" would be diminished by investigators seeking the lowest level. *Note, "United States v. McNulty:* Title III and the Admissibility in Federal Court of Illegally Gathered State Evidence," 80 *Nw.U.L.Rev.* 1714, 1743, 1752 (1986). We emphasized this point in *State v. Mollica, supra,* when we reviewed decisions resolving "whether in any legally significant degree the federal action can or should be considered state action." 114 *N.J.* at 355. Those criteria for evaluating the "symbiotic relationship" between

state and federal agents will resolve the level of privacy that should be protected here. *Note, supra,* 80 *Nw.U.L.Rev.* at 1745.

We recognize that it is neither the prerogative nor purpose of the New Jersey Legislature to establish standards for the conduct of federal agents, but rather to establish expectations of privacy among the citizens of New Jersey. Among the expectations that the Legislature may have intended, however, is that when state and federal agencies act in tandem, the evidence gathered to be used in state courts shall meet the measure of state standards. In other words, it shall satisfy the requirement that a prosecuting authority shall have determined that "there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception." *N.J. S.A.* 2A:156A–4(c). State standards might be satisfied if a state officer, who anticipated working with federal agents, obtains prior approval for the wiretap from the Attorney General or county prosecutor.

The difficulty with this case is that the record does not fully develop the explanation why the county detective worked with the DEA to continue the investigation. As noted, the informant presented himself to the county authorities in order to obtain a more lenient sentence in connection with pending state proceedings. He was then turned over to the federal agents. The Appellate Division found, under the circumstances, no evidence of a cooperative undertaking. We think specific questions must be addressed with respect to the nature and purposes of the investigation: how the state officials became involved, why the evidence did not result in a federal prosecution, and whether there was an agreement that certain level cases would be state cases and others federal. In short, was the federal action "in any legally significant degree" to be considered state action?

To sum up, the effort to stanch the flow of drugs in our society requires intensive investigation at both state and feder-

al levels. Many independent federal investigations conducted in good faith and in accordance with federal law will produce untainted evidence of criminal activity in New Jersey. It would be regressive and serve no interests of our citizens to preclude the use of such evidence in a state criminal proceeding. In this case, defendant asserts that local law enforcement sought to circumvent legislative restrictions on its activities. That assertion will be tested in the remand.

The judgment of the Appellate Division is reversed and the cause remanded to the Law Division for determination of whether this was a joint undertaking sufficiently implicating the purposes of the New Jersey Wiretap Law and the privacy interests of its citizens such that the evidence should be suppressed.

POLLOCK, J., concurring in part and dissenting in part.

This case requires the Court to decide whether tapes of intercepted telephone conversations seized by federal enforcement officials in compliance with The Omnibus Crime Control and Safe Streets Act of 1968, 18 *U.S.C.* §§ 2510–21 (1970 & 1989 supp.) (the Federal Wiretap Act), are admissible in a New Jersey state proceeding when the federal agents did not comply with the requirements of the New Jersey Wiretapping and Electronic Surveillance Control Act, *N.J.S.A.* 2A:156A–1 to –26 (the Act). The majority implicitly recognizes that it would be possible to interpret the New Jersey law as meaning that evidence independently obtained by federal agents according to federal standards, but in violation of State standards, is inadmissible in State courts. *Ante* at 276–77. It finds, however, that the Legislature did not intend to have the Act apply to federal officers acting in conformity with federal standards solely because "the act's requirement for prosecutorial concurrence does not extend by its language to the federal agent." *Ante* at 278. Thus, the Court concludes that neither "the act's automatic-exclusion provisions * * * [n]or * * * the [act's] dis-

closure provisions" applies to federal officers. *Ante* at 278. The Court, however, remands "for determination of whether this was a joint undertaking sufficiently implicating the purposes of the New Jersey Wiretap Law and the privacy interests of its citizens such that the evidence should be suppressed." *Ante* at 285.

I agree with the majority to the extent it holds that the tapes of the intercepted telephone messages may be excluded from admission into evidence in the courts of this State if State and federal officials were acting in cooperation when the federal officials tapped defendant's telephone. I also agree that the Legislature could adopt legislation precluding the admission of wiretap evidence when it is obtained by federal officials acting alone and subsequently turned over to State officials. *Ante* at 276. My initial difference with the majority is that I believe the Legislature has already taken the necessary action to preclude the use of such evidence. Although I recognize that the Act does not expressly apply to federal officials, a fair reading of its provisions and legislative history leads me to conclude that the Legislature intended it to preclude the admission in the courts of this State of illegally-seized wiretap evidence whether that evidence was seized by State or federal officials.

In ascertaining whether the Legislature intended that result, one cannot ignore the breadth of the prohibition in *N.J.S.A.* 2A:156A–3, which makes unlawful all wiretaps unless "specifically" permitted by that section. *N.J.S.A.* 2A:156A–3 provides:

Except as otherwise specifically provided in this act, any person who:

a. Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication; or

b. Willfully discloses or endeavors to disclose to any other person the contents of any wire or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication; or

c. Willfully uses or endeavors to use the contents of any wire or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire or oral communication;

shall be guilty of a misdemeanor and shall be fined not more than $10,000.00 or imprisoned not more than 5 years, or both. Subsections b and c of this section shall not apply to the contents of any wire or oral communication, or evidence derived therefrom, that has become common knowledge or public information.

The definition section of the Act, *N.J.S.A.* 2A:156A–2, defines "person" by reference to the definition in *N.J.S.A.* 1:1–2, which states that the term applies to "individuals." I believe that for the purposes of the Act the term "individual" includes federal officials.

Given that federal officers are "persons," a fair reading of *N.J.S.A.* 2A:156A–3 implies that the Legislature intended the Act to apply when wiretap evidence obtained by those officials is offered as evidence in a State court proceeding. Other courts have reached the same result when interpreting similar language in their wiretap statutes. *People v. Jones,* 30 *Cal. App.*3d 852, 106 *Cal.Rptr.* 749, *appeal dismissed,* 414 *U.S.* 804, 94 *S.Ct.* 163, 38 *L.Ed.*2d 40 (1973) (interpreting "any person" in state wiretap statute to apply to federal law-enforcement agents); *People v. Williams,* 94 *Wash.*2d 531, 539–42, 617 *P.*2d 1012, 1017–18 (1980) (rejecting argument that federal agents should be excluded from operation of state wiretap act because it specifically stated that it applied to "the State of Washington, its agencies, and subdivisions," but not to the federal government). For today's purposes, we need not determine whether the Act is invalid because it might possibly result in the imposition of criminal liability on federal officials. Given the importance assigned by the Legislature to the right of privacy, we should not reach for that issue until it is presented. As today's opinions indicate, the Court is sharply divided on the exclusion from State courts of wiretap evidence seized by federal officials in violation of State law. That issue, together with the Court's concern about the possible criminal liability of federal officials, suggests that it might be appropriate for the Legislature to consider clarifying amendments to the Act.

Furthermore, I believe that wiretaps by the federal officers do not fit within one of the exceptions "specifically provided in

[the] [A]ct." *N.J.S.A.* 2A:156A–3. Those exceptions are listed in *N.J.S.A.* 2A:156A–4, which provides in relevant part:

It shall not be unlawful under this act for:

\* \* \* \* \* \* \* \*

c. Any person acting at the direction of an investigative or law enforcement officer to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception; provided, however, that no such interception shall be made unless the Attorney General or his designee or a county prosecutor within his authority determines that there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception \* \* \*.

An "investigative or law enforcement officer" is defined in *N.J.S.A.* 2A:156A–2f as "any officer of the State of New Jersey or of a political subdivision thereof." Although federal agents are omitted from the definition, that omission can hardly be construed as authorizing federal agents to provide wiretap evidence to New Jersey law-enforcement officials in violation of the Act. In the present case, moreover, the federal officials did not obtain prior approval of the Attorney General or a county prosecutor. Of course, no such authorization need be obtained for the admission of evidence into the federal court. It is only when the seized evidence is to be introduced into the courts of this State that the provisions of the Act are triggered. Thus, the majority misses the mark when it states, "[b]ut New Jersey cannot make illegal what federal law makes legal for federal agents." *Ante* at 278.

Specific provisions of the Act govern the disclosure and exchange of wiretap information between federal and state law-enforcement officials. *N.J.S.A.* 2A:156A–17a provides:

Any investigative or law enforcement officer or other person who, *by any means authorized by this act,* has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose or use such contents or evidence to investigative or law enforcement officers of this or another state, any of its political subdivisions, or of the United States to the extent that such disclosure or use is appropriate to the proper performance of his official duties. [Emphasis added.]

As originally enacted, the statute did not contain the phrase "or other person." This omission, combined with the definition of "law enforcement officer," which was restricted to State and

local law-enforcement officers, inadvertently led to the result that the statute governed the exchange of information only between State law-enforcement officials and not between those officials and their federal counterparts. *See* Senate Judiciary Committee Statement, *S*. 1417 at 2 (May 19, 1975); Hyland & Martinez, *The New Jersey Experience: Wiretapping and Electronic Surveillance*, 173 *N.Y.L.J.* 1 (1975). Consequently, *N.J. S.A.* 2A:156A–17a was amended in 1975, when the Act was reauthorized, to govern the exchange of wiretap evidence between State and federal law-enforcement officials. *L.*1975, *c.* 131, § 9 (eff. June 30, 1975). Consistent with that conclusion, the Court concedes that "[t]he legislative history [of this amendment] indicates a strong interest in protecting the privacy of individuals and controlling intrusive police activity." *Ante* at 276. Notwithstanding that concession, the Court's opinion remains a studied effort to undermine the privacy interest that the Legislature sought to protect.

When revising *N.J.S.A.* 2A:156A–17a, the Legislature chose not to follow the example of those states that expressly allow the admission in state court of evidence obtained by federal officers in conformity with federal law but contrary to state law. *E.g.*, 18 *Pa.Cons.Stat.Ann.* § 5717(c) (Purdon 1983 & 1989 supp.); *see Commonwealth v. Trignani*, 334 *Pa.Super* 526, 530–32, 483 *A.*2d 862, 864 (1984). The disclosure section of the Pennsylvania statute, for example, allows

> [a]ny person who, *by any means authorized by the laws of another state or the Federal government,* has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents or evidence to any investigative or law enforcement officer. [18 *Pa.Cons.Stat.Ann.* § 5717(c) (emphasis added).]

If the New Jersey Legislature intended to allow wiretap evidence seized in this State by federal officers acting in conformity with federal law, it could have used language similar to that used in the Pennsylvania statute. Instead, the Legislature retained the provision that disclosure could occur only when the evidence was obtained "by any means authorized by this act." *N.J.S.A.* 2A:156A–17a. In sum, the Act applies to "any per-

son," including a federal officer, who makes a wiretap. *N.J. S.A.* 2A:156A–3. As indicated previously, the federal officers here did not obtain the approval of the Attorney General or the county prosecutor, as mandated by *N.J.S.A.* 2A:156A–4. Consequently, the wiretaps were not obtained "by * * * means authorized by this act." *N.J.S.A.* 2A:156A–17a.

Contrary to the assertion of the majority, *ante* at 278, the conduct of federal officers is not being regulated. *Accord Jones, supra,* 30 *Cal.App.*3d at 854, 106 *Cal.Rptr.* at 751; *Williams, supra,* 94 *Wash.*2d at 538–40, 617 *P.*2d at 1017. Application of the Act to determine admissibility of the evidence in state courts does not affect the admissibility of that evidence in federal courts. Exclusion of the evidence from a state court proceeding would do no more than protect the integrity of that proceeding from evidence obtained in violation of state law. That conclusion is consistent with the Federal Wiretap Act, which recognizes that states may accord greater protection to the right of privacy than is accorded under the Federal Wiretap Act.

The Federal Wiretap Act was a response to privacy concerns raised by the Supreme Court in *Berger v. New York,* 388 *U.S.* 41, 87 *S.Ct.* 1873, 18 *L.Ed.*2d 1040 (1972), and *Katz v. United States,* 389 *U.S.* 347, 88 *S.Ct.* 507, 19 *L.Ed.*2d 576 (1976). The federal statute was designed with three primary congressional goals: (1) to establish a standard of admissibility of wiretap evidence for federal court proceedings; (2) to set a nationwide minimum standard for infringements upon citizens' privacy; and (3) to allow the states to create state statutory schemes more protective of their citizens' privacy than the federal minimum standard. *See* 18 *U.S.C.* § 2516(2) (1970 & 1989 supp.); § 801, ¶ (b), *Pub.L. No.* 90–351, 82 *Stat.* 211 (1968); *S.Rep.* No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 2 *U.S.Code Cong. & Admin. News* 2112, 2153–57, 2187 (1968); *United States v. Marion,* 535 *F.*2d 697, 702 (2d Cir.1976); *People v. Conklin,* 12 *Cal.*3d 259, 266–73, 522 *P.*2d 1049, 1053–58, 114 *Cal.Rptr.* 241, 245–50 (1974), *appeal dismissed,* 419 *U.S.* 1065,

95 *S.Ct.* 652, 42 *L.Ed.*2d 661 (1974); *Commonwealth v. Vitello,* 367 *Mass.* 224, 245–47, 327 *N.E.*2d 819, 832–34 (1975); *State v. Catania,* 85 *N.J.* 418, 436 (1981); *State v. Barber,* 169 *N.J.Super.* 26, 30 (1979); *Williams, supra,* 94 *Wash.*2d 531, 538–40, 617 *P.*2d 1012, 1017.

Congress did not intend to preempt more protective state requirements. *See, e.g., Catania, supra,* 85 *N.J.* at 436; *Barber, supra,* 169 *N.J.Super.* at 30; *see Marion, supra,* 535 *F.*2d at 702; *Conklin, supra,* 12 *Cal.*3d at 266–73, 522 *P.*2d at 1053–58, 114 *Cal.Rptr.* at 245–50; *State v. Farha,* 218 *Kan.* 394, 400, 544 *P.*2d 341, 348 (1975); *Vitello, supra,* 367 *Mass.* at 245–47, 327 *N.E.*2d at 832–34; *Williams, supra,* 94 *Wash.*2d at 538–40, 617 *P.*2d at 1017. Consequently, the application of more restrictive state standards is consistent with congressional intent in the Federal Wiretap Act. *Williams, supra,* 94 *Wash.*2d at 538–40, 617 *P.*2d at 1017.

Until today, the courts of this State have strictly construed the New Jersey Act to afford maximum safeguards for individual privacy. *See, e.g., Catania, supra,* 85 *N.J.* at 437; *State v. Cerbo,* 78 *N.J.* 595, 604 (1979); *In re Wire Communication,* 76 *N.J.* 255, 260 (1978); *State v. Molinaro,* 117 *N.J.Super.* 276 (Law Div.1971), *rev'd on other grounds,* 122 *N.J.Super.* 181 (App.Div.), certif. denied, 62 *N.J.* 574 (1973); *State v. Sidoti,* 116 *N.J.Super.* 70, 78 (Law Div.1971), *rev'd on other grounds,* 120 *N.J.Super.* 208 (App.Div.1972). Underlying the strict construction of the Act is the principle that it implicates "an intrusion into individual rights of privacy * * *." *Catania, supra,* 85 *N.J.* at 437. Exclusion of wiretap evidence seized by federal officers is consistent with the proper construction of the State and Federal Wiretap Acts. Implicit in the Court's decision is a subtle shift away from strict construction of the Act, with a correlative diminution of the privacy rights of all citizens. Whatever merit lies in that approach, it is inconsistent with the intent of the Legislature and our prior construction of the Act.

This leads me to conclude that the exclusion from state court proceedings of wiretap evidence seized by federal officials in violation of the Act is consistent with the proper construction of the State and Federal Wiretap Acts. Concerned as the Legislature was with the protection of the right of privacy, *ante* at 276, I doubt that it would have enacted a law to protect that right against State, but not federal officials. It makes little difference to a person whose conversation is tapped that the tap was carried out by federal, rather than State officials. *See Elkins v. United States*, 364 *U.S.* 206, 215, 80 *S.Ct.* 1437, 1443, 4 *L.Ed.*2d 1669, 1676 (1960). Thus, I find it anomalous for the majority to exclude evidence obtained through an illegal tap when that tap is performed by state, as distinguished from federal officials.

When illegally-seized evidence is used in state court proceedings, the judicial integrity of those courts is offended as much when the evidence is seized by a federal official as when it is seized by a state official. Precluding the use in state courts of evidence seized illegally by federal officials would not disturb principles of federalism. Those officials could continue to use that evidence in federal courts, assuming the use is permissible under federal law. *State v. Mollica*, 114 *N.J.* 329 (1989), is not to the contrary. In *Mollica*, we carefully eschewed deciding whether telephone records seized by federal officials consistent with federal law, but in violation of state law, could be admitted in state court proceedings. What we so carefully avoided in *Mollica*, however, is needlessly legitimized in today's decision. Under the majority's interpretation of the Act, the Court need not decide whether evidence seized by federal officials in violation of state law may be admitted in state court proceedings.

The appropriate remedy under the Act is the exclusion of the evidence of the wiretap. *N.J.S.A.* 2A:156A–21; *see Cerbo, supra,* 78 *N.J.* at 603; *State v. Novembrino*, 105 *N.J.* 95, 172–73 (1987) (Handler, J., concurring). Consequently, I would reverse the defendant's conviction, suppress the wiretap evidence, and remand the matter to the Law Division.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices HANDLER, O'HERN and GARIBALDI—4.

*Concurring in result*—Justices CLIFFORD, POLLOCK and STEIN—3.