804 A.2d 565

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. FULLER
TOTH, DEFENDANT–RESPONDENT/CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 3, 2002—Decided June 13, 2002.

Before Judges BRAITHWAITE, COBURN AND
WEISSBARD.

*Gerard C. Sims, Jr.,* Deputy Attorney General, argued the cause for appellant (*David Samson,* Attorney General, attorney; *Mr. Sims* and *Christopher Matthews,* Deputy Attorneys General, of counsel and on the brief).

*Michael B. Jones* argued the cause for respondent/cross-appellant (*Peter A. Garcia,* Acting Public Defender, attorney; *Mr. Jones,* of counsel and on the brief).

The opinion of the court was delivered by

BRAITHWAITE, J.A.D.

The State appeals by leave granted from an order suppressing statements defendant made during a telephone conversation that was intercepted pursuant to a consensual interception authorized by the Gloucester County Prosecutor's "designee" under *N.J.S.A.* 2A:156A–4c. The central issue on appeal is whether the word "designee" authorizes the Attorney General and county prosecutors to name more than one assistant attorney general and assistant prosecutor as an authorized designee pursuant to *N.J.S.A.* 2A:156A–4c. In granting defendant's motion to suppress, the judge interpreted the statute to limit the Gloucester County prosecutor to appoint only one designee.

On appeal, the State argues that: (1) "designee" authorizes the prosecutor "to provide for multiple designees;" (2) "[t]he appointment of multiple designees is not a critical violation of the wiretap act requiring suppression of the evidence;" and (3) the Law Division "order requiring the prosecutor to produce information regarding internal procedures was in error." We agree with the State that the word "designee" authorizes multiple designees and therefore reverse the order granting defendant's motion to suppress. Our decision on point one renders the resolution of point two unnecessary. We decline to address point three because the contested information was not presented to the motion judge for review. We are therefore unaware of what the information is and are consequently unable to review this issue.

There is a cross-appeal filed by defendant. He asserts that the motion judge erred in suppressing only the intercepted communications and should have also suppressed the "evidence obtained from the conversations as well." Because of our resolution of point one of the appeal, the cross-appeal is moot.

I

Between November 29, 2000, and December 1, 2000, the Pitman Police Department and the Gloucester Prosecutor's Office conducted an investigation into the drug possession and distribution activities of defendant. The State obtained a quantity of marijuana from J.O.,[1] a juvenile, and also a statement from her that she sold the drugs for defendant on consignment. She agreed to participate in monitored and recorded telephone conversations as part of the investigation. Telephone conversations between J.O. and defendant were monitored and recorded pursuant to a consensual interception authorization executed by Gloucester County Senior Assistant Prosecutor Michael S. Curwin on November 30, 2000. At some point after the consensual intercepts began, J.O. arranged to meet defendant in Pitman, where defendant was arrested while approaching J.O.'s home.

On January 9, 2001, indictment number 01–01–00018 was returned by the Gloucester County grand jury charging defendant with third degree distribution of marijuana, N.J.S.A. 2C:35–5a(1) and N.J.S.A. 2C:35–5b(11); and second degree employment of a juvenile in a drug distribution scheme, N.J.S.A. 2C:35–6.

On or about September 7, 2001, defendant filed a motion to suppress the consensually recorded telephone conversations, alleging that Curwin was not authorized to approve consensual interceptions. On September 28, 2001, the return date of the motion, the judge reviewed *in camera* the memo designating those prosecutors allowed to authorize consensual interceptions. The State

---

[1] The State's brief refers to the juvenile as J.Q., while defendant's brief and the indictment refers to her as J.O.

then produced a redacted copy of the Gloucester County Prosecutor's November 14, 2000 memo authorizing Curwin to approve consensual interceptions pursuant to *N.J.S.A.* 2A:156–4c. The redacted portion of the memo was deemed not subject to discovery by the State. Before the hearing concluded, the judge ordered the State to produce additional documents related to the redacted portion of the memo.

On October 12, 2001, the State filed a motion for leave to appeal the order to produce further documentation. On January 10, 2002, we granted the State's motion. That appeal is docket number A–2226–01.

On the same date, October 12, 2001, the judge granted defendant's motion to suppress the intercepted telephone calls. On October 22, 2001, the State filed a motion for reconsideration of the order to suppress. The judge considered and denied the Attorney General's motion to appear as *amicus curiae*. The prosecutor relied on the Attorney General's brief in support of its motion for reconsideration, but after a hearing on November 2, 2001, the judge denied the motion.

On November 16, 2001, the Attorney General, pursuant to *N.J.S.A.* 52:17B–107a, superceded the Gloucester County Prosecutor's Office for purposes of this appeal. On November 21, 2001, the Attorney General filed a motion for leave to appeal from the order denying reconsideration. On December 12, 2001, defendant filed a motion for leave to cross-appeal from the order denying his motion to suppress any and all evidence arising from the intercepts including observations of him and his subsequent arrest. On January 10, 2002, we granted the State's motion for leave to appeal (docket number A–2206–01) and consolidated it with A–2226–01. We also granted defendant's motion for leave to cross-appeal.

## II

The State argues that, based on the longstanding statutory principle that singular words in statutes are to include and apply

to the plural form, the only reasonable reading of *N.J.S.A.* 2A:156A–4c authorizes the Attorney General and county prosecutors to designate multiple persons to review and authorize consensual intercepts. It claims that *N.J.S.A.* 2A:156A–4c must be read in light of *N.J.S.A.* 1:1–2. It further argues that such an interpretation is not repugnant to the subject or context of *N.J.S.A.* 2A:156A–4c.

Defendant asserts that the motion judge was correct to limit the meaning of the word to a singular designation. He claims that the prosecutor's designation of multiple individuals to act on his behalf violated the plain language of the statute as well as "the intent of strong, centralized control over wire and electronic interceptions" that runs throughout the New Jersey Wiretapping and Electronic Surveillance Control Act, *N.J.S.A.* 2A:156A–1 to–34 (the "Act").

As noted, the motion judge interpreted the language in *N.J.S.A.* 2A–156A–4c to limit the county prosecutor to only one designee to approve consensual intercepts. He concluded that the Gloucester County Prosecutor's designation of multiple attorneys authorized to grant the consensual interceptions violated the Act. He specifically stated that all he was ruling on was "this particular memo. Nothing more. Nothing less." Based upon this determination, he granted defendant's motion to suppress the intercepted telephone calls.

## III

The history of this Act bears mentioning at this point in order to better understand the context of the argument before us. *N.J.S.A.* 2A:156A–4c originally read in relevant part:

It shall not be unlawful under this act for:

. . . .

c. Any person acting at the direction of an investigative or law enforcement officer to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception; provided, however, that no such interception shall be made unless the Attorney General or his designee or a county prosecutor within his

authority determines that there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception;

[*N.J.S.A.* 2A:156A–4c, amended by L.1999, c. 151, § 3.]

As amended, it now reads in pertinent part:

It shall not be unlawful under this act for:

. . . .

c. Any person acting at the direction of an investigative or law enforcement officer to intercept a wire, electronic or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception; provided, however, that no such interception shall be made without the prior approval of the Attorney General or his designee or a county prosecutor or *his designee;*

[*N.J.S.A.* 2A–156A–4c (emphasis added).]

Thus, the 1999 amendments eliminated the "reasonable suspicion" standard and the jurisdictional "authority" standard for county prosecutors, and expressly allowed "a designee" to act for the county prosecutor. *Ibid.*

In practice, it appears that at least since 1988, the Attorneys General have interpreted the phrase "or his designee" to allow more than one person to be designated at any given time. Following the 1999 amendments, on November 14, 2000, the Gloucester County prosecutor designated four individuals to review and authorize consensual interceptions. In the event of their absence, he designated two additional individuals.

## IV

"The meaning of a statute first must be sought in the language in which it is framed and, if it is plain, our sole function is to enforce it according to its terms." *Dempsey v. Mastropasqua,* 242 *N.J.Super.* 234, 238, 576 *A.*2d 335 (1990). When a statute is clear and unambiguous on its face, there is no need to construe or interpret its meaning. *Ibid.* "We may not disregard plain statutory language to replace it with an unenacted legislative intent, because such action would constitute the undemocratic process of judicial lawmaking." *Ibid.*

Since "designee" is not defined in the legislation, we must resort to other time-tested sources. *Black's Law Dictionary* defines "designee" as: "[a] *person* who has been designated to perform some duty or carry out some specific role." *Id.* at 457 (7th ed.1999) (emphasis added). *N.J.S.A.* 1:1–2, which defines words and phrases used in any statute, is instructive on the meaning of the word "person," which imports the singular number.

> Number; gender. Whenever, in describing or referring to any person, party, matter or thing, any word importing the singular number or masculine gender is used, the same shall be understood to include and to apply to several persons or parties as well as to 1 person or party and to females as well as males, and to bodies corporate as well as individuals, and to several matters and things as well as 1 matter or thing.
>
> [*N.J.S.A.* 1:1–2.]

By reading the definition of "designee" in conjunction with the principle that singular words in a statute are to be read as plural, it is clear that "designee" "shall be understood to include and to apply to several persons." *N.J.S.A.* 1:1–2. The position by both the motion judge and defendant that the Legislature would have clearly stated designee in the plural if it meant for more than one person to be authorized is not persuasive.

It must be presumed that the Legislature was aware of existing legislation at the time it adopted *N.J.S.A.* 2A–156A–4c. *See Jacobs v. New Jersey State Highway Authority,* 54 *N.J.* 393, 401, 255 *A.*2d 266 (1969). Consequently, the Legislature's awareness of *N.J.S.A.* 1:1–2 supports the conclusion that it intended designee to mean more than one person.

We next address the caveat in *N.J.S.A.* 1:1–2 to determine if it excludes application here. *N.J.S.A.* 1:1–2 begins by stating:

> Unless it be otherwise *expressly provided or there is something in the subject or context repugnant to such construction,* the following words and phrases, when used in any statute and in the Revised Statutes, shall have the meaning herein given to them.
>
> [*N.J.S.A.* 1:1–2 (emphasis added).]

Neither circumstance in which the singular should not be read to include the plural applies here.

First, there is no express provision in the Act concerning the quantity, qualifications, or duration of designees authorized to approve consensual interceptions for a county prosecutor. As amended, it simply states that there must be approval of the Attorney General or his designee or the county prosecutor or his designee prior to a consensual interception at the direction of a law enforcement officer. *N.J.S.A.* 2A:156A–4c. Nothing expressed in the statute, therefore, demonstrates a legislative intent to exempt "designee" from construction pursuant to *N.J.S.A.* 1:1–2.

Second, there is nothing "in the subject or context" of *N.J.S.A.* 2A:156–4c that is "repugnant to" multiple designees. *N.J.S.A.* 1:1–2. "In statutory construction, repugnant is perhaps best equated with irreconcilable conflict." *Pacific Discount Co. v. Jackson,* 37 *N.J.* 169, 173, 179 *A.*2d 745 (1962). To determine if multiple designees is in "irreconcilable conflict" with the statute, reviewing the legislative scheme of the Act and its language is instructive. *See Alan J. Cornblatt, P.A. v. Barow,* 153 *N.J.* 218, 234, 708 *A.*2d 401 (1998).

The Act regulates the electronic interception of communications in New Jersey. It provides a series of procedures to be followed with regard to wiretaps. *See e.g., N.J.S.A.* 2A:156A–8 and–9. Its purpose is to protect citizens' privacy from unauthorized intrusions. *State v. Minter,* 116 *N.J.* 269, 275, 561 *A.*2d 570 (1989). The legislative history indicates a strong interest in protecting the privacy of individuals and controlling intrusive police activity. *Id.* at 276, 561 *A.*2d 570.

The section within which consensual intercepts is found, however, is one of two sections of exceptions to the rigorous requirements under the Act. *See N.J.S.A.* 2A:156A–4 and–6. The less restrictive language utilized contrasts sharply with the numerous express limitations under *N.J.S.A.* 2A:156A–8 and–9. The Legislature specified that applications for an order of authorization to intercept non-consensual communications must be made by "[t]he Attorney General, county prosecutor or a person designated to act

for such an official and to perform his duties in and during his actual absence or disability." *N.J.S.A.* 2A:156A–8,–9g(2)(a). The lack of such limiting language for consensual interceptions must, therefore, be seen as intentional. *See McCann v. Clerk of the City of Jersey City*, 167 *N.J.* 311, 321, 771 *A.2d* 1123 (2001) (finding that the Legislature intended two distinct standards for forfeiture of office when it used different language in two subsections of the Act).

■ Turning to the legislative scheme of which consensual intercepts are a part, it is clear that unauthorized wiretaps by law enforcement are constitutional violations. *Berger v. New York*, 388 *U.S.* 41, 44, 87 *S.Ct.* 1873, 1876, 18 *L.Ed.*2d 1040, 1044 (1967); *Katz v. United States*, 389 *U.S.* 347, 351–53, 88 *S.Ct.* 507, 511–12, 19 *L.Ed.*2d 576, 582–83 (1967); *Minter, supra*, 116 *N.J.* at 275, 561 *A.2d* 570 (1989). Consensual interceptions, however, do not represent the same intrusions into constitutionally protected privacy. *State v. McDermott*, 167 *N.J.Super.* 271, 278, 400 *A.2d* 830 (1979). Any party to a conversation may actually record a conversation without the knowledge or consent of the other parties to the conversation. *N.J.S.A.* 2A:156A–4d. Only when such a party is directed to record by law enforcement does prosecutorial oversight become necessary. *N.J.S.A.* 2A:156A–4c. In *State v. Worthy*, 141 *N.J.* 368, 661 *A.2d* 1244 (1995), our Supreme Court noted the difference between consensual and non-consensual wiretaps. It stated:

> Courts have acknowledged that the conditions for authorization of consensual wiretaps are not as strict as those applicable to non-consensual wiretaps, and have understood that the Legislature did not intend to restrict the activities of law enforcement "to any greater degree than by the one condition it imposed." *State v. Schultz*, 176 *N.J.Super.* 65, 68, 422 *A.2d* 105 (App.Div.1980). *Accord State v. Parisi*, 181 *N.J.Super.* 117, 120, 436 *A.2d* 948 (App.Div.1981); *State v. Bisaccia*, 251 *N.J.Super.* 508, 512, 598 *A.2d* 944 (Law Div.1991).
>
> [*Id.* at 381, 661 *A.2d* 1244.]

■ As "our task is to harmonize the individual sections and read the statute in the way that is most consistent with overall legislative intent," *Fiore v. Consol. Freightways*, 140 *N.J.* 452, 466, 659 *A.2d* 436 (1995), we do not conclude, as the motion judge did,

that the limitation expressed in *N.J.S.A.* 2A:156A–8 and–9 applies in the context of *N.J.S.A.* 2A:156A–4c. As discussed above, if the Legislature wanted a designee appointed for the purposes of consensual interceptions only when the county prosecutor was absent or disabled, it would have said so.

As noted above, the provisions of *N.J.S.A.* 1:1–2 apply to *N.J.S.A.* 2A:156A–4c. Here, the motion judge found that the female gender could be imported from *N.J.S.A.* 1:1–2 into *N.J.S.A.* 2A:156A–4c, but not the provision of *N.J.S.A.* 1:1–2 that makes the singular plural. We do not perceive the distinction made by the motion judge. Our conclusion is supported by the importance attached to *N.J.S.A.* 1:1–2 by our Supreme Court.

> This section is as forceful in the construction of pre-existing as after-enacted legislation. It is in *pari materia* with every statute of the state. The title of the act clearly indicates its purpose. It is in effect an amendment of every existing statute. It is to be deemed a part of every act passed subsequent to it. It is by express words made applicable to every existing statute, unless in the act 'it be otherwise provided, or there be something in the subject or context repugnant to such construction.'
>
> [*Petrozzino v. Monroe Calculating Mach. Co., Inc.*, 47 *N.J.* 577, 582, 222 *A.*2d 73 (1966), n. 2 (quoting *Walker v. Hyland*, 70 *N.J.L.* 69, 80, 56 *A.* 268 (Sup.Ct. 1903)).]

We must effectuate the "fundamental purpose for which [*N.J.S.A.* 2A:156A–4c] was enacted." *New Jersey Builders, Owners and Managers Ass'n v. Blair*, 60 *N.J.* 330, 338, 288 *A.*2d 855 (1972). That purpose is to protect citizens from "overly zealous and completely discretionary law-enforcement practices." *Worthy, supra*, 141 *N.J.* at 381, 661 *A.*2d 1244. Allowing multiple designees to authorize consensual interceptions does not contravene this purpose. Statutory construction does not rely only on "literalisms, technisms or the so-called formal rules of interpretation." *Jersey City Chapter of Prop. Owner's Protective Ass'n v. City Council*, 55 *N.J.* 86, 100, 259 *A.*2d 698 (1969). It more aptly encompasses the breadth of the legislative objectives and commonsense. *Ibid.* Commonsense dictates that "designee" in this context does not admit of any other interpretation than multiple

persons. We therefore reverse the order granting defendant's motion to suppress.

## V

In light of our conclusion that the statute authorizes more than one designee, we need not address point two of the State's brief.

As to point three of the appeal, the State asserts that the judge erred when he ordered the prosecutor's office to produce for *in camera* review the documents referred to in the prosecutor's memo designating the prosecutors authorized to approve consensual intercepts. The prosecutor never submitted the information for *in camera* review. If the prosecutor had complied with the order and the judge found that the internal documents were discoverable by defendant, then we may have had something to review. Absent that, the factual record does not permit resolution of this matter. *Hansen v. Hansen,* 339 *N.J.Super.* 128, 143, 770 *A.2d* 1278 (App.Div.2001). Further, our resolution of the first issue renders this issue moot.

Finally, we have no reason to address defendant's cross-appeal in light of our resolution of the appeal. We would only have to address this claim if we affirmed the order suppressing defendant's intercepted statement.

Reversed.