**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1299-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DUANE M. HOLMES, a/k/a
DEWAYNE M. HOLMES,

     Defendant-Appellant.

_____

Submitted May 27, 2025 – Decided July 11, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 19-08-0864.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Nadine Kronis, Assistant Deputy Public Defender, of counsel and on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Edward F. Ray, Assistant Prosecutor, on the brief).

PER CURIAM

After losing his suppression motion, defendant Duane Holmes entered a negotiated guilty plea to second-degree theft, N.J.S.A. 2C:20-3 and N.J.S.A. 2C:2-6, and three counts of third-degree burglary, N.J.S.A. 2C:18-2(a)(1) and N.J.S.A. 2C:2-6. He was sentenced to time served. Defendant now appeals from the denial of his suppression motion, raising the following single point for our consideration:

> THE MATTER MUST BE REMANDED BECAUSE THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS EVIDENCE WITHOUT FIRST HOLDING AN EVIDENTIARY HEARING.

Based on our review of the record and the governing legal principles, we affirm.

I.

The evidential basis for the charges stemmed from a lengthy investigation by the Bergen County Prosecutor's Office (BCPO) Special Investigations Squad into a string of commercial burglaries targeting mostly cellular phone and high-end cosmetic retail stores. Lead detective, Edward Kazmierczak, recognized defendant from a prior investigation on surveillance footage retrieved during the course of the investigation. Ultimately, defendant and several codefendants were linked to the burglaries.

As part of the investigation, law enforcement obtained communications data warrants (CDWs), search warrants, and wiretap orders for the suspects'

phones. Specifically, on March 8, 2019, a judge authorized a twenty-day wiretap of defendant's phone as well as the phones of several of his codefendants. Two days later, on March 10, law enforcement intercepted a call between defendant and one of his codefendants, during which defendant acted as a lookout while his codefendant stole a van. The following day, March 11, law enforcement intercepted another call between defendant and the same codefendant, during which the codefendant used the stolen van to commit a burglary while being directed by defendant. Defendant and other members of the criminal enterprise were arrested the same day.

Subsequently, a Bergen County Grand Jury returned a fifty-three count indictment charging defendant as an accomplice with twenty-two counts of third-degree burglary, N.J.S.A. 2C:18-2(a)(1) and N.J.S.A. 2C:2-6 (counts 2 to 4, 7 to 11, 15 to 24, 27 to 28, and 31 to 32); third-degree attempted burglary, N.J.S.A. 2C:18-2(a)(1), N.J.S.A. 2C:5-1, and N.J.S.A. 2C:2-6 (count 14); three counts of third-degree theft of a motor vehicle, N.J.S.A. 2C:20-3 and N.J.S.A. 2C:2-6 (counts 5, 12, and 29); three counts of third-degree receiving stolen property, N.J.S.A. 2C:20-7 and N.J.S.A. 2C:2-6 (counts 6, 13, and 30); second-degree eluding, N.J.S.A. 2C:29-2(b) and N.J.S.A. 2C:2-6 (count 25); fourth-degree aggravated assault on a law enforcement officer, 2C:12-1(b)(5)(a) and

3

N.J.S.A. 2C:2-6 (count 26); second-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a), N.J.S.A. 2C:20-2, and N.J.S.A. 2C:2-6 (count 33); second-degree receiving stolen property, N.J.S.A. 2C:20-3(a), N.J.S.A. 2C:20-2, and N.J.S.A. 2C:2-6 (count 34); second-degree fencing, N.J.S.A. 2C:20-7.1(b), N.J.S.A. 2C:20-2, and N.J.S.A. 2C:2-6 (count 35); two counts of second-degree money laundering, N.J.S.A. 2C:21-25 and N.J.S.A. 2C:2-6 (counts 36 to 37); six counts of third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(2) and N.J.S.A. 2C:2-6 (counts 46 to 51); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) and N.J.S.A. 2C:2-6 (count 52), as well as with second-degree conspiracy, N.J.S.A. 2C:5-2 (count 38); second-degree racketeering, N.J.S.A. 2C:41-2(c) to (d) (count 39); and second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7(b) (count 53). Seven codefendants were charged in various counts in the same indictment.

Following defendant's arrest, on June 3, 2019, Kazmierczak sent a letter to Sprint requesting "any and all subscriber information for [twenty-eight] mobile telephone numbers," including defendant's, dating back to March 7, 2019. The twenty-eight telephone numbers were intercepted during the course of the wiretap. Kazmierczak attached the now expired wiretap order to the letter. Sprint denied the initial request on June 5, 2019, because it failed to "includ[e]

the signature page." It is unclear in the record whether Kazmierczak sent a whole new request or merely sent the missing signature page because the second letter Kazmierczak sent to Sprint, purportedly dated June 14, 2019, is not part of the record on appeal.

Nonetheless, on June 16, 2019, Sprint responded to Kazmierczak's request with what Sprint described as "Subscription Info (Basic)." Sprint's June 16 response consisted of account details, including defendant's name, address, and account number; subscriber details; call records; and features related to defendant's mobile phone plan. Notably, the response also included "CDR[1] w/ Cell Site," and "Voicemail Access," along with a comment that "the [requested] records . . . [were] attached herein." Because Sprint's June 16 response did not include subscriber information for all the requested phone numbers, on June 24, 2019, Kazmierczak served Sprint with a grand jury subpoena for the subscriber information for all the phones, and, on July 1, 2019, Sprint complied.

Defendant filed an omnibus motion on July 23, 2021, requesting, among other relief, suppression of all physical evidence gathered in violation of his

---

[1] "CDR" stands for call-detail records, or "phone numbers dialed from and received by a phone as well as 'the date, time, and duration of those calls.'" See State v. Manning, 240 N.J. 308, 317 n.1 (2020) (quoting State v. Lunsford, 226 N.J. 129, 133 (2016)).

A-1299-23

Fourth Amendment right, including evidence defendant claimed was obtained in June and July 2019 using the expired March 2019 wiretap order. In support, defendant supplied Sprint's response to his subpoena duces tecum requiring Sprint to "provide copies of all information and records" pertaining to defendant's phone number, "includ[ing] all documents and information exchanged between" Sprint and the BCPO "as a result of . . . Kazmierczak's June 14, 2019 request." Sprint's response to defendant included the June 16, 2019 response to Kazmierczak with all the enclosures.

Following oral argument, the trial judge denied defendant's motion. In an April 5, 2022 order and accompanying written opinion, the judge found that Kazmierczak served "a proper subpoena" on Sprint for defendant's subscriber information on June 24, 2019. According to the judge, Kazmierczak complied with N.J.S.A. 2A:156A-29(f), which allows law enforcement to legally obtain subscriber information by serving a subpoena on a provider of electronic communication services. The judge explained that because N.J.S.A. 2A:156A-29(f) does not require a wiretap order, the fact that the March 2019 wiretap order had expired was unrelated. Defendant filed a motion for reconsideration, which the judge denied on July 22, 2022.

A-1299-23

On August 18, 2022, defendant filed another suppression motion, seeking to suppress "the contents of all wire, electronic and oral communications or evidence" derived from the March 2019 wiretap order "for failure to comply with the statutory requirements" of the New Jersey Wiretapping and Electronic Surveillance Control Act (Wiretap Act), N.J.S.A. 2A:156A-1 to -37. In support, defendant reiterated that Kazmierczak's June 14, 2019 letter to Sprint relied on the expired March 2019 wiretap order "for the purpose of intercepting and acquiring [defendant's] wire and electronic communications" and Kazmierczak therefore violated multiple provisions of the Wiretap Act.

After the judge heard oral argument, he entered an order on February 2, 2023, denying the motion. In a supporting oral decision on the record, the judge explained that he had "already addressed th[e] argument" in the "omnibus opinion dated April 5, 2022," and found that Kazmierczak "complied with [N.J.S.A. 2A:156A-29(f)] and obtained the proper subpoena to obtain the[] records." The judge reiterated that:

> [T]he State is legally allowed to request subscriber data from a provider of electronic communication services without a [wiretap] order and as such, these requests for information were not related to the March 7, 2019 [wiretap] order and are considered separately. This [c]ourt also found that defendant's argument had no merit because [N.J.S.A. 2A:156A-29(f)] allows the State to request this information without a [wiretap]

7

order. As such, defendant's motion to suppress the [wiretap] evidence on this ground is denied.

The judge likewise rejected defendant's contentions that Kazmierczak's use of the expired wiretap order violated any provision of the Wiretap Act and denied the motion without conducting an evidentiary hearing.

Following additional motion practice, defendant pled guilty to counts 28 and 31 through 33 on September 14, 2023. In accordance with the plea agreement, he was sentenced to time served, totaling 1,649 days in custody, and the remaining charges in the indictment were dismissed. This appeal followed.

II.

Our standard of review is well settled. "'When reviewing a trial court's decision to grant or deny a suppression motion, appellate courts "[ordinarily] defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record."'" State v. Smart, 253 N.J. 156, 164 (2023) (alteration in original) (quoting State v. Dunbar, 229 N.J. 521, 538 (2017)). As such, we "will set aside a trial court's findings of fact only when such findings 'are clearly mistaken.'" Dunbar, 229 N.J. at 538 (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). We owe no deference, however, "to a trial court's interpretation of law, which we review de novo." Ibid.

On appeal, defendant argues the judge erred in denying his suppression motion without an evidentiary hearing because material disputed facts existed. Specifically, defendant argues the State used the expired wiretap order to request his "historical cell site location information [(CSLI)]," "voicemail messages," "stored content," "subscriber information," and "call-detail records" in the June 2019 request. He posits the judge erred in "decid[ing] the issue based on the word of the prosecuting attorney" without requiring Kazmierczak to testify under oath. He seeks a remand for an evidentiary hearing.

"The proper mechanism through which to explore the constitutionality of warrantless police conduct is an evidentiary hearing." State v. Atwood, 232 N.J. 433, 445 (2018). "If material facts are disputed, testimony thereon shall be taken in open court." R. 3:5-7(c). However, an evidentiary hearing is only required on a motion to suppress when the defendant "places material facts in dispute." State v. Green, 346 N.J. Super. 87, 90-91 (App. Div. 2001) (citing State v. Hewins, 166 N.J. Super. 210, 213-15 (Law Div. 1979), aff'd, 178 N.J. Super. 360 (1981)).

A "defendant's assertion that he [or she] denies the truth of the State's allegations" does not place material issues in dispute. Id. at 91. Likewise, "'[f]actual allegations which are general and conclusory or based on suspicion

A-1299-23

and conjecture [do] not suffice' to establish a dispute of material facts warranting a testimonial hearing." State v. Jones, 475 N.J. Super. 520, 528 (App. Div. 2023) (second alteration in original) (quoting Hewins, 166 N.J. Super. at 215). Instead, a hearing is necessary when the parties offer "diametrically irreconcilable accounts." State v. Parker, 459 N.J. Super. 26, 29-30 (App. Div. 2019).

In our review,

> [w]e do not accord deference to a court's determination there is no need for an evidentiary hearing on a motion to suppress based on a determination, made after a review of the parties' briefs, that there are no "material facts" in dispute. [State v. Carrillo, 469 N.J. Super. 318, 333 (App. Div. 2021)]. "Determining . . . if facts are in dispute is a matter of law" that may be made by "examin[ing] side-by-side the parties' allegations." Ibid. The determination of whether facts are material also presents an issue of law we review de novo. Ibid.
>
> [Jones, 475 N.J. Super. at 528 (omission and third alteration in original).]

Here, defendant failed to establish disputed material facts to warrant an evidentiary hearing. To support his claim that material facts were in dispute, defendant points to the June 16, 2019 letter from Sprint to the BCPO that included defendant's (CSLI) and call-detail records, as well as emails which "suggest[] that . . . Kazmierczak had attached the expired wiretap warrant to his request for [defendant]'s cellphone data." However, the State neither disputes

10

that Kazmierczak attached the expired wiretap order to the letter sent to Sprint for defendant's subscriber information nor that Sprint provided the BCPO with defendant's CSLI and call-detail records. According to the State, "[t]he most plausible explanation" is that Sprint "sent defendant's call detail records with [CSLI] and per call measurement data on June 16, 2019 in error, which is not an uncommon occurrence." Defendant neither challenges the State's assertion nor identifies what would be unearthed at an evidentiary hearing to support his version of the facts.

Even if defendant established disputed facts, he failed to establish materiality because no "legal consequences . . . would flow from [the] facts if established." Carrillo, 469 N.J. Super. at 333; see Green, 346 N.J. Super. at 101 (determining that the defendant's assertions of fact did not warrant an evidentiary hearing because the challenged search was lawful even if the "defendant's version of the circumstances" was accepted). First, the State already had defendant's cell phone in its possession by March 11, 2019, the day of defendant's arrest. During oral argument on February 2, 2023, the prosecutor confirmed that defendant's phone had been "sitting in police custody with a search warrant to be searched" since his arrest. As such, there would have been

no need to access defendant's phone because the State was already in possession of the phone by the time the subpoena was sent to Sprint in June 2019.

Further, pursuant to a CDW, the State had already obtained defendant's call-detail records and (CSLI) from February 1, 2019, through February 21, 2019, as well as Global Positioning System (GPS) location tracking for thirty days beginning February 21, 2019. In addition, the wiretap order allowed the interception of defendant's communications, beginning March 8, 2019. The wiretap affidavit also sought a CDW to access communications data, including text messages, GPS information, and voicemail messages, for twenty days from March 8, 2019. Therefore, the State already had the information defendant argues it obtained by virtue of the expired wiretap order.

Lastly, although the wiretap of defendant's phone terminated on March 11, 2019, and was sealed on March 13, 2019, several provisions in the order remained operative. Significantly, the wiretap affidavit requested a court order directing service providers "to provide the members of law enforcement with subscriber information . . . necessary to obtain the proper identification of individuals calling into the [t]arget [p]hones and/or the identity of individuals called from the [t]arget [p]hones." Thus, the wiretap order itself provided law

enforcement with the legal authorization to obtain defendant's subscriber information.

As the judge pointed out, pursuant to N.J.S.A. 2A:156A-29(f), "[a] provider of electronic communication service . . . shall disclose to a law enforcement agency" that "obtains a . . . subpoena" the following subscriber information:  name; address; telephone number; telephone connection records or records of session times and durations; length of service; and payment methods, including credit cards or bank account numbers.  Critically, the State may subpoena this information without a wiretap order.

Conversely, law enforcement is required to obtain a wiretap order to intercept any wire, electronic, or oral communication.  N.J.S.A. 2A:156A-8. "The Wiretap Act 'regulates the electronic interception of communications in New Jersey. . . . Its purpose is to protect citizens' privacy from unauthorized intrusions.'"  State v. Martinez, 461 N.J. Super. 249, 266 (App. Div. 2019) (omission in original) (quoting State v. Toth, 354 N.J. Super. 13, 21 (App. Div. 2002)).  To that end, "[i]t provides a series of procedures to be followed with regard to wiretaps."  Toth, 354 N.J. Super. at 21.  Similarly, because "[cell phone] users have a reasonable expectation of privacy in their [cell phone]

location information, . . . police must obtain a warrant before accessing that information." State v. Earls, 214 N.J. 564, 569 (2013).

In State v. Harris, 457 N.J. Super. 34 (App. Div. 2018), a jury convicted the defendant of two counts of murder and related weapons offenses stemming from the "drug-related shooting of two men." Id. at 39. We reversed the convictions and remanded for a new trial because we determined the trial court erred in denying defendant's suppression motion. Id. at 48. The motion was premised on an officer inspecting an incriminating photograph on a CD provided by Sprint in response to a CDW. Id. at 39, 41-42. The incriminating photograph went beyond the scope of the warrant.[2] Id. at 42. The officer viewing the CD Sprint provided "assumed without checking that the photographs were within the correct time range" dictated by the CDW and "did not open the text documents, which would have revealed the date the photograph was sent or received." Id. at 42-43. Instead, "[h]e looked only at the photographs . . . to see if they were relevant to the investigation." Id. at 43.

---

[2] A supervisor in the Sprint "subpoena compliance group" testified at the suppression hearing "that it was Sprint's protocol at that time to provide all electronic folders containing photographs from Picture Mail without sorting them by date, regardless of the dates requested in the CDW." Id. at 41-42.

The trial court denied the defendant's motion to suppress the incriminating photograph, and we reversed, rejecting the State's argument that the photograph was lawfully obtained under the plain view exception to the warrant requirement. Id. at 46-48. We expounded:

> An officer is not in a lawful viewing place when he opens JPEG files clearly containing photographs provided in response to a CDW that does not authorize the review of photographs. The detective's actions of clicking on the files to open them up are analogous to an officer opening a door or cabinet to view what is inside, essentially to get a better view of the item. . . . Clicking to open a JPEG was similar to moving stereo equipment to locate a serial number. Without probable cause to search that item, plain view does not justify the search. The "inadvertence" prong was also not satisfied because the officer knew that the JPEG files were photographs, which were not included in the warrant, making his plain view neither inadvertent nor in compliance with Hicks.[3]
>
> [Harris, 457 N.J. Super. at 46-47.]

We also rejected the State's harmless error argument because the State failed to "demonstrate beyond a reasonable doubt that the error did not contribute to the defendant's conviction." Id. at 47. In fact, "[t]he prosecutor

---

[3] Arizona v. Hicks, 480 U.S. 321, 324-25 (1987) (holding that an officer moving stereo equipment in order to locate serial numbers to determine if equipment was stolen constituted a search, even though the officer was lawfully present within the apartment where the equipment was located in plain view).

A-1299-23

placed great weight on the photograph, stressing the 'importan[ce]' of the photograph at least fourteen different times in summation." Ibid. (second alteration in original). "Additionally, the fact that the jury was deadlocked three times" showed that the State's "evidence of defendant's guilt" was not overwhelming. Id. at 48.

This case differs from Harris in significant ways. First, unlike the damning photograph in Harris, there is no evidence that the CSLI and call-detail records Sprint sent to the State in June were used to charge or convict defendant. The BCPO had been conducting a lengthy investigation and had already collected substantial evidence against defendant. Second, by the time Sprint sent the CSLI and call-detail records in June, the State had already acquired the same information through the prior CDWs, wiretap orders, and forensic analysis of defendant's phone. As such, any data erroneously obtained was harmless error as it was largely duplicative of what the State had already lawfully obtained. "For error to be harmless, the State must demonstrate beyond a reasonable doubt that the error did not contribute to the defendant's conviction." Id. at 47 (citing State v. Camacho, 218 N.J. 533, 548 (2014)). Such is the case here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division